## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MINNESOTA

---

In re:                                              Case No.: 10-48691

**Mighty Fortress International Ministries, Inc.**
**AKA Mighty Fortress Church**
                                                    **Chapter 11**
Debtor.

---

## MIGHTY FORTRESS INTERNATIONAL MINISTRIES, INC'S DISCLOSURE STATEMENT, DATED FEBRUARY 18, 2011

---

### Table of Contents

I.   INTRODUCTION ................................................................................................ - 1 -
   A.   PURPOSE OF THIS DOCUMENT ................................................................ - 1 -
   B.   DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING ........................ - 2 -
   C.   DISCLAIMER ................................................................................ - 3 -

II.  BACKGROUND OF DEBTOR ................................................................................ - 3 -
   A.   DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS ........................................ - 3 -
   B.   INSIDERS AND MANAGEMENT OF THE DEBTOR BEFORE AND DURING THE BANKRUPTCY ................ - 4 -
   D.   EVENTS LEADING TO CHAPTER 11 FILING ...................................................... - 4 -
   E.   SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE .......................................... - 5 -
      1.   Commencement of the Chapter 11 Cases ................................................ - 5 -
      2.   Retained Professionals .............................................................. - 5 -
      3.   First Day Relief .................................................................... - 6 -
   F.   PROJECTED RECOVERY OF AVOIDABLE TRANSFERS ................................................ - 6 -
   G.   CLAIMS OBJECTIONS ........................................................................ - 6 -
   H.   CURRENT AND HISTORICAL FINANCIAL CONDITIONS ............................................ - 6 -

III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ........................ - 7 -
   A.   WHAT IS THE PURPOSE OF THE PLAN OF REORGANIZATION? ...................................... - 7 -
   B.   UNCLASSIFIED CLAIMS ...................................................................... - 7 -
      1.   Administrative Expenses ............................................................ - 7 -
      2.   Priority Tax Claims ................................................................ - 8 -
   C.   CLASSES OF CLAIMS AND EQUITY INTERESTS .................................................. - 8 -
      1.   Classes of Priority Unsecured Claims ................................................ - 8 -
      2.   Secured Claims .................................................................... - 9 -
      3.   General Unsecured Claims .......................................................... - 10 -

    4.    *Classes of Equity Interest Holders* ................................................................................ - 10 -
  **D.**  **MEANS OF IMPLEMENTING THE PLAN** ............................................................................ - 11 -
    1.    *Source of Payments* ................................................................................................. - 11 -
    2.    *Post-confirmation Management* ................................................................................ - 11 -
  **E.**  **RISK FACTORS** ......................................................................................................... - 12 -
  **F.**  **EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...................................................... - 12 -
  **G.**  **TAX CONSEQUENCES OF PLAN** ................................................................................... - 12 -

**IV.**     **CONFIRMATION REQUIREMENTS AND PROCEDURES** ........................................ **- 14 -**

  **A.**  **WHO MAY VOTE OR OBJECT** ..................................................................................... - 14 -
    1    *What Is an Allowed Claim or an Allowed Equity Interest?* .................................. - 15 -
    2.    *What Is an Impaired Claim or Impaired Equity Interest?* .................................. - 15 -
    3.    *Who is **Not** Entitled to Vote* ................................................................................. - 15 -
    4.    *Who Can Vote in More Than One Class* ................................................................ - 16 -
  **B.**  **VOTES NECESSARY TO CONFIRM THE PLAN** ............................................................. - 16 -
    1.    *Votes Necessary for a Class to Accept the Plan* .................................................. - 16 -
    2.    *Treatment of Nonaccepting Classes* ...................................................................... - 16 -
  **C.**  **LIQUIDATION ANALYSIS** .......................................................................................... - 17 -
  **D.**  **FEASIBILITY** ........................................................................................................... - 17 -
    1.    *Ability to Initially Fund Plan* ................................................................................ - 17 -
    2.    *Ability to Make Future Plan Payments And Operate Without Further Reorganization* ....................... - 17 -

**V.**     **EFFECT OF CONFIRMATION OF PLAN** ................................................................ **- 18 -**

  A.  **DISCHARGE OF DEBTOR** ........................................................................................... - 18 -
  B.  **MODIFICATION OF PLAN** .......................................................................................... - 18 -
  C.  **FINAL DECREE** ....................................................................................................... - 18 -

**EXHIBITS A** ................................................................................................................. **- 20 -**

**EXHIBIT B** ................................................................................................................... **- 21 -**

# I.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") of    Mighty Fortress International Ministries, Inc    (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the **Debtor's Plan of Reorganization** (the "Plan") dated February 18, 2011, by **Mighty Fortress International Ministries, Inc. filed on February 19, 2011.**  A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.  ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed at pages 8-12 of this Disclosure Statement.  General unsecured creditors are classified as Class 3, and will receive a distribution of 10% of their allowed claims, to be distributed as follows: Prorata share of $2500.00 per month.

## A.    Purpose of This Document

This Disclosure Statement describes:

The Debtor and significant events during the bankruptcy case,

How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),

Who can vote on or object to the Plan,

What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

Why Debtor believes the  Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.      *Time and Place of the Hearing to Approve This Disclosure Statement and Confirm the Plan*

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place on _____, 2011, before the Honorable Dennis D. O'Brien, United States Bankruptcy Judge, in Courtroom 2B, at the United States Courthouse, 316 N. Robert Street, St. Paul, Minnesota 55101.

2.      *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to:

Clerk of Bankruptcy Court
200 Warren E. Burger Federal Building
316 North Robert Street
St. Paul, MN 55101.

See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____, 2011or it will not be counted.

3.      *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon:

| David E. Flowers | Michael Fadlovich |
|---|---|
| 7616 Currell Blvd., Suite 200 | US Trustee Office |
| Woodbury, Minnesota 55125 | 300 S 4th St Ste 1015 |
|  | Minneapolis, MN 5541 |

by _____, 2011

4.      *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact:

Flowers Law Office
David E. Flowers
7616 Currell Blvd., Suite 200
Woodbury, Minnesota 55125

Telephone: (651) 735-1530
Fax: (651) 846-5298
Email: davidflowers@flowerslawoffice.com

### C.     Disclaimer

**THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT IS SUBJECT TO FINAL APPROVAL AT THE HEARING ON CONFIRMATION OF THE PLAN. OBJECTIONS TO THE ADEQUACY OF THIS DISCLOSURE STATEMENT MAY BE FILED UNTIL _____, 2011.**

## II.     BACKGROUND OF DEBTOR

### A.     Description and History of the Debtor's Business

The  Debtor is a Minnesota non-profit corporation located at 6400 85th Avenue North, in Brooklyn Park, Minnesota, formed and birthed out of a prior ministry in Minneapolis in 1993. Dr. Tom R. Williams serves as pastor of Mighty Fortress International Ministries, Inc. (hereinafter "MFIM").

MFIM is a 501c3 Religious Organization providing a place for congregants and anyone from the general public to experience worship services as well as Biblical Teaching. MFIM also participates in community outreach activities and aide to families and senior citizens.  MFIM has over thirty different ministries in full operation or in the process of execution along with visions of future ministries to include: (a) Family Life Center; (b) Community Outreach Gymnasium, (c) Educational Wing Expansion, (d) Missions School of Theology: (e) Senior Citizens Campus; and (f) Health Clinic with free/reduced services. MFIM has a mandate to spread the Gospel and help to establish places of worship and educational facilities on a worldwide basis.

As a house of worship MFIM solicits contributions from its members to sustain its missions and goals of preaching and spreading the gospel throughout the nation and the world. MFIM's contributions on a yearly basis average between $600,000.00 and $650,000.00.

New Building History

Dr. Williams was led of God to sell its old building and look for land to build another ministry facility. In 1999 Debtor's Minneapolis building was sold and the ministry relocated to a school in Brooklyn Center for the next 9 years.

Upon successfully securing financing to build in July of 2007, Debtor began the building process. In anticipation of starting the building process, Debtor entered into a relationship with Miller Architects. Under the direction of Mr. Dave TeBrake, Debtor began the planning process for the new facility at 85 Mile and Douglas in Brooklyn Park. Mr. TeBrake acted as the General Contractor for the project. As the process continued, Debtor anticipated moving into the new facility with great joy. As the project neared the end, Debtor found to be in the negative instead of in the black as had been promised by the general contractor. So began the spiraling saga of the issues with Debtor and Miller Architects.

**B.     Insiders and Management of the Debtor Before and During the Bankruptcy**

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor   (collectively the "Managers") were: Dr. Tom R. Williams, President, Sabrina R. Williams, Vice-President, Isabel Parker, Treasurer, Teretha Dillard, Treasurer, and Brenda Colston, Executive Secretary

The Managers of the Debtor during the Debtor's chapter 11 case have been: Dr. Tom R. Williams, President, Sabrina R. Williams, Vice-President, Isabel Parker, Treasurer, Teretha Dillard, Treasurer, and Brenda Colston, Executive Secretary

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be: Same as above.   The responsibilities and compensation of these Post Confirmation Managers are described in section III(D)(2) of this Disclosure Statement.

**D.     Events Leading to Chapter 11 Filing**

MFIM entered into an agreement with Miller Architects & Builders (hereinafter "Miller"), one of Debtor's 10 largest creditors, dated July 27, 2007 in which building and labor costs were to total $5,206,499.00.

MFIM closed on a construction loan with Foundation Capital Resources, Inc. (hereinafter "Foundation Capitol") for 6.4 Million dollars on July 6, 2008.   Building Completion was scheduled for June 2008; the actual completion date was in August 2008.

Construction draws were completed; the last draw was rejected by the lender. This caused a deficit of approximately $350,000.00.    MFIM's Mortgage Payment escalated after construction to the amount of $56,000.00.    Miller and several sub-contractors began to file mechanics liens against MFIM. Those liens escalated to court proceedings. MFIM entered into negotiations with Miller and several contractors that lead to stipulations and confessions of judgment.

MFIM sought assistance of Foundation Capital to payoff the contractors. Foundation Capital verbally agreed to assist with the matter but later backed out. The liens and judgments continued. Attorneys from Miller continued to aggressively pursue assets of MFIM.

MFIM experienced significant decrease in income due to parishioners' response to economic downturn.    In May of 2009 MFIM was forced to enter into a Forbearance Agreement with Foundation Capital in conjunction with an agreed lease to Excell Academy for Higher Learning, a charter school in Brooklyn Park, Minnesota.    As a result of that action a plan was instituted whereby payments were temporarily reduced and gradually increased to $56,000.00. In April 2010, Miller Architects through their attorneys obtained a Sheriff's Writ allowing them to garnish funds. Funds were removed from First National Bank by a Sheriff's Writ, executed by their attorney requesting funds in the amount of $19,178.76 be sent to him by US Mail. This action caused MFIM to be unable to make a complete payment to Foundation Capital in April 2010. Subsequently, all MFIM bank accounts were closed. An amendment to the Forbearance Agreement was created to allow more time to make up the $19,000.00 difference. MFIM petitioned the Hennepin County District Court and the State Appellate Court to deny Miller of any additional funds. That request was denied.

Despite all efforts, Debtor consulted with counsel and its financial advisors and determined that it could not afford to continue operations without bankruptcy protection and reluctantly decided to file a Chapter 11 Petition in order to maintain its operations for the benefit of Debtor's members and for the benefit of all of its creditors

### E.    Significant Events During the Bankruptcy Case

1.    Commencement of the Chapter 11 Cases

November 21, 2010, the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court in the District of Minnesota and was assigned case number is 10-48691. This case is now pending before the Honorable Dennis D. O'Brien.  The Debtor has continued to operate and remains in possession of their property pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.    Retained Professionals

The Bankruptcy Court approved the Debtors' retention of one professional to represent and assist them in connection with the Chapter 11 Case. Specifically, the Bankruptcy Court has approved the retention of: Flowers Law Office, and David E. Flowers, to serve as general bankruptcy.

3.      First Day Relief

At the commencement of the Debtors' Chapter 11 Cases, the Debtors filed several motions seeking what is commonly referred to as "first day" relief. This first day relief was designed to meet the goals of (1) continuing the Debtors' operations in Chapter 11 with as little disruption as possible, (2) maintaining the confidence and support of parishioners, employees and certain other key constituencies; and (3) establishing procedures for the smooth and efficient administration of the Chapter 11 Case.

The Court approved the requested first day relief pertaining to the authority to pay employees accrued pre-petition wages, salaries and benefits, entered by the Court on December 1, 2010.   A motion requesting continued use of existing bank accounts was withdrawn, and Debtor subsequently opened a Debtor In Possession ("DIP") bank account with Associated Bank.

Prior to the issuance of this statement, Foundation Capitol Resource, Inc. ("Foundation"), who hold the mortgage to the building occupied by Debtor, filed a motion for relief from the automatic stay.

**F.      Projected Recovery of Avoidable Transfers**

The Debtor has not yet completed its investigation with regard to prepetition transactions. If you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtor may seek to avoid such transfer.

**G.      Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan.

**H.      Current and Historical Financial Conditions**

Debtor's monthly operational costs without the mortgage and any contractor payments are in the area of about $30,000.00. This consists of utilities which are extremely high during the winter months, payroll for a skeleton crew of employees that are needed for day to day operation, and the monthly bills associated with running a full time ministry.   Debtor currently hosts a regular Sunday Morning and occasional Sunday Night Service, a weekly Bible Class and Prayer Service and many other activities throughout the week.   Debtor is seeking to restructure its mortgage obligation so that it can focus on improving its financial picture and its core mission

The identity and fair market value of the estate's assets are listed in Exhibit B.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in Exhibit C.

### III.   SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

#### A.   What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

#### B.   Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has not placed the following claims in any class:

##### 1.   *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $94,000.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |

| Professional Fees, as approved by the Court. | $0.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
|---|---|---|
| Clerk's Office Fees | $1,039.00 | Paid in full on the effective date of the Plan |
| Other administrative expenses | $2,000.00 | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | $650.00 | Paid in full on the effective date of the Plan |
| TOTAL | $97,689.00 | |

2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.  As a tax exempt, entity, Debtor does not have or anticipate any priority tax claims.

**C.    Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.    *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

Debtor does not anticipate any priority unsecured claims.  Any such claims will be treated as required by the Code.

| Class #1 | Description | Impairment | Treatment |
|---|---|---|---|
| | None<br><br>Total amt of claims =              $ 0.00 | None | As required by the Code |

2.  *Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class # 2 | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| | *Secure claim of:*<br><br>Foundation Capital Resource<br><br>Collateral =<br>**Lot 1, Block 1, Mighty Fortress Church, Hennepin County, MN**<br><br>Allowed Secured Amount=<br>**undetermined**<br><br>Priority of lien =   **1**<br><br>Principal owed =<br>**$7,292,680.63**<br><br>Pre-pet. arrearage =<br>**$892,680.63** | No | Yes | Monthly Payment: $25,000.00, on or before the fifthteen day of each month Term: 60 months from the effective date of the plan.<br><br>Interest Rate: 4.5%<br><br>Debtor will make a balloon payment at the end of the 60 month term for the outstanding secured claim balance, such balloon payment is estimated to be $6,000,000.00 dollars.<br><br>All liens will be retained.  No additional payments will be made to cure defaults. |

| | Total Estimated claim = $6,000,000.00 | | | |
|---|---|---|---|---|

3.      *General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of general unsecured claims against the Debtor:

| Class #3 | Description | Impairment | Treatment | |
|---|---|---|---|---|
| | General Unsecured Class<br><br>A holder of a Class 3 claim will receive a prorata portion of a regular monthly distribution in the amount of $250.00 for 60 months after the effective date of this Plan, in accordance with the terms of distribution in the Plan | Impaired | Monthly payment<br><br>Pmts Begin<br><br>Pmts End<br><br>Interest rate %<br><br>Estimated percent of claim paid | = **$2,500.00**<br><br>= **Effective Date of Plan**<br><br>= **0%**<br><br>= 10% |

4.      *Classes of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the classes of equity interest holders:

| Class #4 | Description | Impairment | Treatment |
|---|---|---|---|
| | None | None | **None** |

### D.     Means of Implementing the Plan

#### 1.     *Source of Payments*

Payments and distributions under the Plan will be funded by the following:

Debtor's source of funding is from contributions of members and guests, as well as from events and programs sponsored by Debtor.  Other sources of funding for the plan will come from leasing of space at Debtor's facility.  Ultimately, Debtor expects to obtain financing at the end of the five-year term of the Plan to satisfy the balance of any secured obligations at that time.

#### 2.     *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider | Position | Compensation |
|---|---|---|---|---|
| Dr. Tom R. Williams | | Yes | President | Regular payroll and housing allowance for pastoral services |
| Sabrina R. Williams | | Yes | Vice-President | None |
| Isabel Parker | | Yes | Treasurer | Salaried Employee |
| Teretha Dillard | | Yes | Treasurer | None |
| Brenda Colston | | Yes | Executive Secretary | Occasional Stipend |

### E.        Risk Factors

The proposed Plan has the following risks:

The risk factors that could affect the viability of the Plan include the possibility of further financial strain with the general economy, as contributions to the Debtor tend to diminish when members are out of work.

### F.        Executory Contracts and Unexpired Leases

The Plan, in Exhibit 6.1, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan.  Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.  Exhibit 6.1 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Exhibit 6.1 will be rejected under the Plan.  Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

***Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.***

### G.        Tax Consequences of Plan

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

A summary description of certain material federal income tax consequences of the Plan is provided below. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan and no tax opinion is given by this Disclosure Statement. No rulings or determination letters from the Internal Revenue Service ("IRS") or any other tax authorities have been obtained or sought with respect to the Plan, and the description below is not binding upon the IRS or such other tax authorities.

The following discussion of federal income tax consequences is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), regulations promulgated thereunder, judicial decisions, and published administrative rulings and pronouncements of the IRS as in effect on the date hereof. Legislative, judicial, or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below.

This discussion does not address foreign, state, or local tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign entities, nonresident alien individuals, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, broker-dealers, and tax-exempt organizations). Furthermore, estate and gift tax issues are not addressed herein.

(i)    Tax Consequences to a holder of an allowed claim.

 If a holder of an allowed claim receives cash in full satisfaction of such allowed claim, the holder may be permitted to recognize a loss (or may be required to recognize gain) equal to the difference between  (i) the adjusted tax basis such holder had in its allowed claim, and (ii) the amount of cash received. Depending upon the manner in which the allowed claim arose, such loss (or gain) may either be capital or ordinary in nature. Due to limitations set forth in the Tax Code, a holder of an allowed claim that recognizes a capital loss upon the receipt of cash in full satisfaction of such allowed claim may not be able to utilize such capital loss in the taxable year it arises or possibly ever. The foregoing discussion is intended only as  a summary of certain United States federal income tax consequences of the Plan and is  not a substitute for careful tax planning and analysis with a tax professional. The above discussion is for informational purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on the particular circumstances  of the holder of a claim or equity interest. Accordingly, a holder of a claim and equity interest is strongly urged to consult its own tax advisor about the United States federal, state and local and  applicable foreign income and other tax consequences of the Plan, including with  respect to tax reporting and record keeping requirements.

(ii)     Federal Tax Consequences to the Debtors.

The Plan proposes modifications to Debtor's indebtedness that may result in income in the amount of debt cancelled or forgiven ("COD income"). Although COD income of taxpayers may be excluded from income under section 13108 of the Tax Code (the "Bankruptcy Exception"), a taxpayer who excludes COD income from currently taxable gross income due to the Bankruptcy Exception is required to reduce tax attributes by the amount of the excluded income. Any reduction to Debtor's tax attributes would be done in the following order of priority:

(a)    net operating losses and net operating loss carryovers;

- - 13 - -

(b)   general business credits under section 38;

(c)   alternative minimum tax credits;

(d)   net capital losses and capital loss carryovers;

(e)   the basis of depreciable property (to the extent the basis exceeds remaining liabilities);

**IRS CIRCULAR 230 LEGEND.** TO COMPLY WITH U.S. TREASURY REGULATIONS, WE ADVISE YOU THAT ANY U.S. FEDERAL  TAX ADVICE INCLUDED IN THIS COMMUNICATION (1) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, TO AVOID ANY U.S. FEDERAL TAX PENALTIES, AND (2) WAS WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTION OR MATTER ADDRESSED BY THIS COMMUNICATION. ANY TAXPAYER RECEIVING THIS COMMUNICATION SHOULD SEEK ADVICE  FROM AN INDEPENDENT TAX ADVISOR BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code.  These include the requirements that:  the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes 2 and 3 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.  The Plan Proponent believes that classes 1 and 4 are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

1      *What Is an Allowed Claim or an Allowed Equity Interest?* Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim in this case was March 21, 2011.**

2.      *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.      *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

> holders of claims and equity interests that have been disallowed by an order of the Court;

> holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

> holders of claims or equity interests in unimpaired classes;

> holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

> holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

> administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

4.      *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

## B.    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

1.      *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.      *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code.  A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity  interest, as the variations on this general rule are numerous and complex.***

### C.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

### D.    Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.    *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibit F.

2.    *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information.  Those projections are listed in Exhibit G.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $**330,000.00**.  The final Plan payment is expected to be paid in 5 years from the date of Plan approval.

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

## V.        EFFECT OF CONFIRMATION OF PLAN

### A.        Discharge of Debtor

<u>Discharge.</u>  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B).  After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

### B.        Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

### C.        Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

Brenda Colston
For Mighty Fortress International Ministries, Inc

**EXHIBITS A**

PLAN OF REORGANIZATION
(ATTACHED)

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF MINNESOTA

---

In re:

**Mighty Fortress International Ministries, Inc.**
**AKA Mighty Fortress Church**

Debtor.

Case No.: 10-48691

Chapter 11

---

# MIGHTY FORTRESS INTERNATIONAL MINISTRIES, INCORPORATED'S PLAN OF REORGANIZATION, DATED FEBRUARY 18, 2011

---

## Table of Contents

INTRODUCTION AND SUMMARY ..................................................................................................1

ARTICLE 1    DEFINITIONS, INTERPRETATION AND EXHIBITS................................................1

1.1    SCOPE OF DEFINITIONS.  ......................................................................................................1
1.2    DEFINITIONS.  ........................................................................................................................1
1.3    INTERPRETATION.  ................................................................................................................5
1.4    COMPUTATION OF TIME.  .....................................................................................................6

ARTICLE 2    CLASSIFICATION OF CLAIMS AND INTERESTS ................................................6

2.1    CLASSIFICATION AND TREATMENT.  ...................................................................................6
2.2    CLASS 1.  ...............................................................................................................................6
2.3    CLASS 2.. ...............................................................................................................................6
2.4    CLASS 3.  ...............................................................................................................................6
2.5    CLASS 4.  ...............................................................................................................................6

ARTICLE 3   PROVISION FOR PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND U.S. TRUSTEE FEES................................................................6

3.1    ADMINISTRATIVE EXPENSE CLAIMS.  ................................................................................6
3.2    PROFESSIONAL FEE CLAIMS.  ..............................................................................................7
3.3    PRIORITY CLAIMS.  ...............................................................................................................8
3.4    U.S. TRUSTEE FEES.  ............................................................................................................8
3.5    UNCLASSIFIED CLAIMS.  ......................................................................................................8

ARTICLE 4   TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN .........................8

ARTICLE 5..................................................................................................................................9

i

**ALLOWANCE AND DISALLOWANCE OF CLAIMS** ........................................................9

5.1   DISPUTED CLAIM.   ................................................................................................9
5.2   DELAY OF DISTRIBUTION ON A DISPUTED CLAIM.........................................................9
5.3   SETTLEMENT OF DISPUTED CLAIMS.   ........................................................................9

**ARTICLES 6** ........................................................................................................9

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...............................................9

6.1   ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES.........................................9
6.2   BAR TO CURE AMOUNTS.   ......................................................................................9

**ARTICLE 7   MEANS OF IMPLEMENTING THE PLAN**............................................10

7.1   FUNDING OF PLAN.   ............................................................................................10
7.2   VESTING AND NON-VESTING OF PROPERTY OF THE ESTATE. ........................................10
7.3   CORPORATE ACTION.   ..........................................................................................10
7.4   CONTINUED CORPORATE EXISTENCE.   ......................................................................10

**ARTICLE 8   AMENDMENTS TO CLAIMS AND ADMINISTRATIVE** .............................10

**EXPENSE CLAIMS AFTER APPLICABLE BAR DATES** ............................................10

8.1   AMENDMENTS TO CLAIMS AND ADMINISTRATIVE EXPENSE CLAIMS.   ............................10
8.2   CLAIMS FILED AFTER BAR DATES.   ........................................................................10

**ARTICLE 9   CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN** ...................11

9.1   CONDITIONS TO EFFECTIVENESS OF PLAN.   ..............................................................11
9.2   NOTICE OF CONFIRMATION OF THE PLAN.   ..............................................................11
9.3   NOTICE OF EFFECTIVE DATE OF THE PLAN.   ............................................................11

**ARTICLE 10   LIMITATION OF LIABILITY, RELEASES AND INJUNCTION** ...................11

10.1   EXCULPATION AND LIMITATION OF LIABILITY.   ........................................................11
10.2   INJUNCTION.   ....................................................................................................12

**ARTICLE 11   RETENTION OF JURISDICTION**.....................................................12

11.1   RETENTION OF JURISDICTION.   ............................................................................12

**ARTICLE 12   MISCELLANEOUS PROVISIONS** .....................................................12

12.1   SEVERABILITY.  I..............................................................................................12
12.2   SETOFFS AND RECOUPMENTS.................................................................................12
12.3   CAPTIONS.   ......................................................................................................13
12.4   BINDING EFFECT.   ..............................................................................................13
12.5   GOVERNING LAW.   ............................................................................................13
12.6   TIMING OF DISTRIBUTIONS.   ................................................................................13
12.7   COMPLIANCE WITH REPORTING REQUIREMENTS.........................................................13
12.8   REVOCATION OR WITHDRAWAL OF PLAN.   ..............................................................13
12.9   NONMATERIAL MODIFICATIONS.   ..........................................................................13
12.10   MATERIAL MODIFICATIONS.   ..............................................................................13
12.11   CORPORATE GOVERNANCE.   ..............................................................................14

**ARTICLE 13   PROVISIONS GOVERNING DISTRIBUTION** ......................................14

ii

13.1    DISTRIBUTIONS.    ....................................................................................................................14

13.2    DELIVERY OF DISTRIBUTIONS.    .............................................................................................14

13.3    MANNER OF PAYMENT.    .......................................................................................................14

**ARTICLE 14   DISCHARGE**......................................................................................................**14**

14.01    DISCHARGE.    ....................................................................................................................14

## INTRODUCTION AND SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of **Mighty Fortress International Ministries, Incorporated** (the "Debtor") from Cash on hand, continued operations and future income.

This Plan provides for 1 class of secured claims; 1 class of unsecured claims; and or equity security holders.  Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately ten cents on the dollar.  This Plan also provides for the full payment of administrative and priority claims.

Mighty Fortress International Ministries, Inc. ("MFIM") proposes the following plan of reorganization (as amended from time to time, and including all addenda, exhibits, schedules and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference, the "Plan"), pursuant to the provisions of chapter 11 of the Bankruptcy Code.

For a discussion of the Debtor's history, business, operations, assets and liabilities and for a summary and analysis of the Plan, reference should be made to the Disclosure Statement in Connection with the Debtor's  Plan of Reorganization (the "Disclosure Statement'). All Creditors and Holders of Equity interests (if any) are encouraged to read the Disclosure Statement and the Plan.  Your rights may be affected.  **You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE 1
## DEFINITIONS, INTERPRETATION AND EXHIBITS

*1.1    Scope of Definitions.*   For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Article 1 of the Plan. Any term used in the Plan that is not defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules (as defined below), shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. Whenever the context requires, such terms shall include the plural as well as the singular number, and reference to any gender shall include the masculine, feminine and neuter genders.

*1.2    Definitions.*   "Administrative Expense Claim" means a Claim for costs and expenses of administration allowed under section 503(b) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtor, any

actual and necessary expenses of operating the business of the Debtor, but exclusive of Professional Fee Claims.

"Administrative Expense Claim Bar Date" means the date fixed in Section 2.1 (b) of this Plan as the last date for filing proofs of Administrative Expense Claims.

"Allowed" when used with respect to a Claim, means a Claim: (a) which has been listed on the Debtor's Schedules as other than disputed, contingent or unliquidated and as to which no proof of Claim or objection has been timely filed; (b) as to which a proof of Claim has been timely filed and either: (i) no objection thereto has been timely filed or (ii) the Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; ( c) which has been allowed under the provisions of this Plan; (d) which is a Professional Claim for which a fee award amount has been approved by Final Order of the Bankruptcy Court; or ( e) which is allowed pursuant to any stipulation of amount and nature of Claim executed by the Debtor and Holder of the Claim on or after the Effective Date.

"Bankruptcy Code" means title 11 of the United States Code, sections 101 et seq., as now in effect or as hereafter amended.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Minnesota, or such other court having jurisdiction over the Chapter 11 Case.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended and the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

"Bar Date" means the date(s) established by the Bankruptcy Court as the last date for filing proofs of Claim against the Debtor.

"Business Day" means any day that is not a Saturday, a Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

"Cash" means Cash or Cash equivalents, including but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

"Causes of Action" means, except as provided otherwise in the Plan, the Confirmation Order or any document, instrument, release or other agreement entered into in connection with the Plan, all Claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims that are or may be pending on the Effective Date or instituted by the Debtor after the Effective Date against any Person based on law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown.

"Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

"Confirmation Hearing" means the hearing before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan.

"Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified or supplemented.

"Creditor" has the same meaning ascribed in section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against any Debtor or Holder of any Claim against property of any Debtor as defined in section 102(2) of the Bankruptcy Code.

"Debtor" means, Mighty Fortress International Ministries, Inc, also known as Mighty Fortress Church.

"Debtor in Possession" means the Debtor in the capacity, and with the status and rights, conferred by sections 1107 and 1108 of the Bankruptcy Code.

"Disallowed," when used with respect to a Claim, means a Claim: (a) which has been listed on the Debtor's Schedules as disputed, contingent or unliquidated and as to which no proof of Claim has been timely filed; (b) as to which a proof of Claim has been timely filed and either: (i) an objection thereto has been timely filed, or (ii) the Claim has been disallowed (but only to the extent disallowed) by a Final Order of the Bankruptcy Court; ( c) which has been disallowed under the provisions of this Plan.

"Disclosure Statement" means the disclosure statement for the Plan approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code (including all schedules and exhibits thereto), as such disclosure statement may be amended or modified from time to time.

"Disputed Claim" means any Claim against a Debtor or property of a Debtor to the extent that the Allowance of such Claim is the subject of an objection, appeal or motion to estimate that has been timely filed by a party in interest and which objection, appeal or motion has not been determined by a Final Order. In the event that any part of a Claim is disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan unless the Debtor and the Holder thereof agree otherwise.

"Effective Date" means the Business Day designated by the Debtor which is at least ten days after the date on which all of the conditions specified in Section 9.1 of this Plan are first satisfied or waived.  If a stay of the confirmation order is in effect on that date, the effective date will be the first Business Day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

- 3 -

"Entity" has the meaning ascribed in section 101(15) of the Bankruptcy Code.

"Estate" means the estate created in the Chapter 11 Case for each Debtor pursuant to section 541 of the Bankruptcy Code.

"File, Filed or Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

"Final Order" means an order entered by a court of competent jurisdiction (other than an interim order that is not appealable) that is not subject to any further appeal.

"General Unsecured Claim" means a Claim that is not an Administrative Expense, a Secured Claim, a Lien Claim, a Miscellaneous Secured Claim, a Priority Claim or a Subordinated Claim.

"Holder" means an Entity holding a Claim or Equity Interest.

"Impaired" means impaired within the definition of section 1124 of the Bankruptcy Code.

"Lien" has the same meaning ascribed in section 101 (37) of the Bankruptcy Code.

"Person" means an individual, corporation, limited partnership, general partnership, association, limited liability company, estate, trust, joint venture, unincorporated organization, any governmental unit, other entity or group.

"Petition Date" means November 23, 2009, the date on which the Debtor commenced its Chapter 11 Case by filing its petition for relief under chapter 11 of the Bankruptcy Code.

"Plan" means this chapter 11 plan, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

"Priority Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under, sections 507(a)(3), (a)(4), (a)(S), (a)(6), (a)(7), (a)(8) or (a)(9) of the Bankruptcy Code.

"Priority Non-tax Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under sections 507(a)(3), (a)(4), (a)(S), (a)(6), (a)(7) or (a)(9) of the Bankruptcy Code, that is not a Priority Tax Claim.

"Priority Tax Claim" means a Claim of a governmental unit of the kind specified in subsection 507(a) (8) of the Bankruptcy Code.

"Professional" means any professional employed or to be compensated pursuant to sections 327,328,330,331, 503(b) or 1103 of the Bankruptcy Code.

- 4 -

"Professional Fee Claim Bar Date" means the date fixed in Section 3.2 of this Plan as the last date for filing proofs of Professional Fee Claims.

"Professional Fee Claim" means a Claim by a Professional for compensation and/or reimbursement of expenses, to the extent allowed pursuant to Sections 330 or 503 of the Bankruptcy Code.

"Property" means "property of the estate" as set forth in section 541 of the Bankruptcy Code.

"Proponent" means the Debtor as proponent of the Plan.

"Reorganized Debtor" means the Debtor in its post-confirmation status.

"Reorganized Operations" means Mighty Fortress International Ministries, Inc. in its post-confirmation status.

"Reorganized MFIM" or "Reorganized Debtor" means Mighty Fortress International Ministries, Inc. in its post-confirmation status.

"Schedules" means the Debtor's schedules of assets and liabilities filed with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

"Secured Claim" means a Claim that is secured by a Lien on, or security interest in, property of any of the Debtor, or that has the benefit of rights of setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in the Debtor's interest in such property, or to the extent of the amount subject to setoff, which value shall be determined as provided in section 506 of the Bankruptcy Code.

"Statutory Fees" means any fees or charges assessed against the Estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

"Subordinated Claim" means, in accordance with section 510(b) of the Bankruptcy Code.

"Unimpaired" means any Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

*1.3    Interpretation.*    For purposes of the Plan, (a) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; ( c) unless otherwise specified, all references in the Plan to Articles, Sections, Schedules and Exhibits are references to Articles,

- 5 -

Sections, Schedules and Exhibits of or to the Plan; (d) the words "herein" and "hereto" refer to the Plan in their entirety rather than to a particular portion of the Plan; ( e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

  1.4    _Computation of Time._   In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 shall apply.

## ARTICLE 2
## CLASSIFICATION OF CLAIMS AND INTERESTS

  2.1    _Classification and Treatment_.   A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class, and such Claim has not been disallowed, paid or released prior to the Effective Date.

  2.2    _Class 1._        All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a) (2), and priority tax claims under § 507(a) (8)).

  2.3    _Class 2_.        The claim of Foundation Capital Resource, Inc. or any other such claim to the extent allowed as a secured claim under § 506 of the Code.

  2.4    _Class 3_.        All unsecured claims allowed under § 502 of the Code.

  2.5    _Class 4_.        Equity interests of the Debtor.

## ARTICLE 3
## PROVISION FOR PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND U.S. TRUSTEE FEES

  3.1    _Administrative Expense Claims_.   All Administrative Expense Claims allowed under § 503 of the Code shall be treated as follows:

  (a) Each Holder of an Allowed Administrative Expense Claim shall receive the full amount thereof, without interest, in Cash (except to the extent that any Holder of an

Allowed Administrative Expense Claim agrees to less favorable treatment thereof) as soon as practicable after the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date that is 11 days after an order of the Bankruptcy Court allowing such Administrative Expense Claim becomes a Final Order, or (iii) as mutually agreed by the Reorganized Debtor and the Holder of such Allowed Administrative Expense Claim.

(b) All applications for payment of Administrative Expense Claims (or any other means of preserving and obtaining payment of Administrative Expense Claims found to be effective by the Bankruptcy Court) shall be filed no later than the 30th day after the Confirmation Date (the "Administrative Expense Claim Bar Date"); and if such requests for payment of Administrative Expense Claims are not so filed, the Holders of such Claims shall be forever barred and shall not be able to assert such Claims in any manner against the Debtor, the Reorganized Debtor, the assets of the Debtor, or the Reorganized Debtor.

3.2    *Professional Fee Claims.*   All Professional Fee Claims not covered by the pay down before approval policy shall be treated as follows:

(a) Each Holder of an Allowed Professional Fee Claim shall receive the full amount thereof, without interest, in Cash (except to the extent that any Holder of an Allowed Professional Fee Claim agrees to less favorable treatment thereof) as soon as practicable after the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date that is 11 days after an order of the Bankruptcy Court allowing such Professional Fee Claim becomes a Final Order, or (iii) as mutually agreed by the Reorganized Debtor and the Holder of such Allowed Professional Fee Claim.

(b) All applications for payment of Professional Fee Claims (or any other means of preserving and obtaining payment of Professional Fee Claims found to be effective by the Bankruptcy Court) for services rendered and/or expenses incurred prior to the Confirmation Date shall be filed no later than the 60th day after the Confirmation Date (the "Professional Fee Claim Bar Date"); and if such requests for payment of Professional Fee Claims are not so filed, the Holders of such Claims shall be forever barred and shall not be able to assert such Claims in any manner against the Debtor or their assets.

(c) All reasonable costs and expenses of the Reorganized Debtor, including, without limitation, fees and expenses (including, without limitation, attorneys' fees and expenses through all levels of appeal) for services rendered in connection with the Chapter 11 Cases and the Plan after the Confirmation Date, including, without limitation, those relating to the resolution of pending Claims and prosecution of Causes of Action, shall be paid promptly by the Reorganized Debtor, without the need for Bankruptcy Court approval, and may be paid as they come due.

3.3   *Priority Claims.*   There are no present or anticipated priority tax claims. However, any such claims will be payable consistent with §1129(a)(9)(C) of the Bankruptcy Code without post-petition interest or penalty, on the later of: (i) the Effective Date or as soon as practicable thereafter, or (ii) the date that is 11 days after an order of the Bankruptcy Court allowing such Priority Claim becomes a Final Order.

3.4   *U.S. Trustee Fees.*   On or before the Effective Date, the Debtor shall pay or have paid in full in Cash all Allowed Statutory Fees payable pursuant to 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) and any fees payable to the Bankruptcy Court which are due and payable on or before the Effective Date. All fees payable *pursuant to 28 U.S.C. § 1930 after the Effective Date will be paid by the Debtor.*

3.5   *Unclassified Claims.*   Under §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.


# ARTICLE 4
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority Claims (none) | Unimpaired | Any Class 1 Priority Claim shall be paid in full, in Cash, upon the later of the effective date of this Plan as defined in Article 1, or the date on which such claim is allowed by a final non-appealable order. |
| Class 2 - Secured Claim of: Foundation Capital Resources | Impaired | Debtor will make monthly payments in the amount of $25,000.00 for a period of 5 years toward secured claims, after which time Debtor must secure new financing to cover the balance of its secured claim. |
| Class 3 - General Unsecured Creditors | Impaired | Creditors in this class will receive a pro rata share of $2,500.00 per month for five years, beginning on the effective date of the Plan. |
| Class 4 - Equity Security Holders of the Debtor (none) | Unpaired (None) | There are no Equity Security Holders. |

## ARTICLE 5
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.1     *Disputed Claim.*        A disputed claim is a claim that has not been allowed or disallowed, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.2     *Delay of Distribution on a Disputed Claim.*  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.3     *Settlement of Disputed Claims.*  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.


## ARTICLES 6
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1     *Assumed Executory Contracts and Unexpired Leases.*

(a)     The Debtor assumes the following executory contracts and/or unexpired leases effective upon the effective date of this Plan:

| Name of Other Parties to Lease or Contract | Description of Contract or Lease |
| --- | --- |
| Excell Academy | Charter school building lease |

(b)     The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.1(a)  above, or before the date of the order confirming this Plan, upon the effective date of this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

6.2     *Bar to Cure Amounts.*  If the assumption of an executory contract or an unexpired lease by the Debtor requires an amount to "cure" any default existing as of the Confirmation Date (the "Cure Amount"), a request for payment of such Cure Amount shall be forever barred and shall not be enforceable against the Debtor or any of them or their properties or agents, successors, or assigns, unless an application for allowance of such Cure Amount is filed with the Bankruptcy Court and served upon the Debtor by the earlier of: (a) 30 days after notice of the Confirmation Date or (b) such other deadline as the Court has or may set for requesting payment of such Cure Amount.

## ARTICLE 7
## MEANS OF IMPLEMENTING THE PLAN

7.1     *Funding of Plan.*     MFMI will fund the plan through income and contributions generated from members and guest and through the leasing of property of MFMI. The Debtor anticipates that operational funds will be sufficient to pay all Allowed Administrative Claims, Professional Fee Claims, Statutory Fees, Priority Tax Claims if any, Priority Non-Tax Claims if any, and Secured Claims, in full, and Allowed General Unsecured Claims plus (if applicable) interest, on the Effective Date and thereafter when Claims become Allowed Claims.

7.2     *Vesting and Non-Vesting of Property of the Estate.* Pursuant to section 1141(b) and (c) of the Bankruptcy Code, all of the Property of the Estate of Operations shall vest in the Reorganized Operations free and clear of all Claims and interests of Creditors, and of Holders of Equity Interests if any.

7.3     *Corporate Action.*     Upon entry of the Confirmation Order, the transactions contemplated by this Plan shall be deemed authorized and approved in all respects. On the Effective Date, the matters provided under the Plan involving the corporate structure of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable state laws without any requirement of further action by any director or officer of the Debtor. On the Effective Date, the Reorganized Debtor shall be authorized and directed to take all necessary and appropriate actions to effectuate the transactions contemplated by the Plan.

7.4     *Continued Corporate Existence.*     Except as otherwise provided in the Plan, the Debtor will continue to exist after the Effective Date, with all of the powers of a corporation under applicable laws of the State of Minnesota pursuant to its certificate of incorporation and bylaws or other organizational documents in effect prior to the Effective Date.

## ARTICLE 8
## AMENDMENTS TO CLAIMS AND ADMINISTRATIVE
## EXPENSE CLAIMS AFTER APPLICABLE BAR DATES

8.1     *Amendments to Claims and Administrative Expense Claims.*     Unless otherwise provided in a Final Order: (a) after the Bar Date, a Claim on account of which a Proof of Claim is not timely filed in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or an Order of the Bankruptcy Court, may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the Holder of such Claim solely to decrease, but not to increase, the face amount or priority; and (b) after the Administrative Expense Claim Bar Date, a Claim on account of which a request for payment of Administrative Expense Claim is not timely filed, may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the Holder of such Claim solely to decrease, but not to increase, the face amount or priority.

8.2     *Claims Filed After Bar Dates.*     Any new or amended Claim filed after the Bar

Date or the Administrative Expense Claims Bar Date ( as applicable) shall be deemed Disallowed in full and expunged without any action by the Debtor or Reorganized Debtor, unless the Holder of such Claim has obtained prior Bankruptcy Court authorization for the Filing. The Holder of a Claim which is disallowed shall not receive any distribution on account of such Claim.

## ARTICLE 9
## CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

9.1    *Conditions to Effectiveness of Plan.*   The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied or waived by the Debtor, as determined in their sole discretion: (a) 10 days shall have passed from the Confirmation Date; (b) the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtor; (c) all documents, instruments and agreements provided for under this Plan or necessary to implement this Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby, in form and substance satisfactory to the Debtor; (d) there are sufficient sources of funding of the Debtor to pay all Allowed Administrative Claims, Allowed Professional Claims and Allowed Priority Tax Claims (if any); and (e) no order of a court restraining the Debtor from consummating the Plan shall have been entered and shall remain in effect.

9.2    *Notice of Confirmation of the Plan.*   Notice of entry of the Confirmation Order shall be provided by the Debtor as required by Bankruptcy Rule 3020(c) (2).

9.3    *Notice of Effective Date of the Plan.*   Notice of the Effective Date shall be provided by the Debtor in the same manner provided with respect to notice of entry of the Confirmation Order.

## ARTICLE 10
## LIMITATION OF LIABILITY, RELEASES AND INJUNCTION

10.1    *Exculpation and Limitation of Liability.*   Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date, the Debtor and their respective officers, directors, members, employees, representatives, counsel, financial advisors or other agents, and their respective successors and assigns (the "Released Parties"), shall be deemed released by each of them against the other, and by all Holders of Claims or Equity Interests, of and from any Claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, in preparation for, or arising out of, the Chapter 11 Cases, including, without limiting the generality of the foregoing, all sales of assets of the Debtor' Estates, the negotiation of the terms of the Plan, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the Property to be distributed under the Plan, except for acts or omissions which constitute bad faith, willful misconduct or gross negligence, and all such Persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code.

10.2     *Injunction.*  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all Persons that have held, currently hold or may hold a Claim, Equity Interest or other debt or liability that is treated pursuant to the terms of the Plan are enjoined from taking any of the following actions on account of any such Claims, Equity Interests, debts or liabilities, other than actions brought to enforce any rights or obligations under the Plan, against the Debtor, the Debtor' Estates, the Trustee, the Trust or Property of the Estates: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability or obligation; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. This injunction shall remain in full force and effect until final distributions to Creditors are made under this Plan.

## ARTICLE 11
## RETENTION OF JURISDICTION

11.1     *Retention of Jurisdiction.*  Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Chapter 11 Cases having been closed, or Final Decrees having been entered, the Bankruptcy Court shall have jurisdiction of matters arising out of, and related to the Cases and the Plan under, and for the purposes of, sections 105(a), 1127, 1142, and 1144 of the Bankruptcy Code.

## ARTICLE 12
## MISCELLANEOUS PROVISIONS

12.1     *Severability.*  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any claim, interest or transaction, the Proponent may modify the Plan in accordance with sections 12.9 or 12.10 of the Plan, as applicable, so that such provision shall not be applicable to the Holder of any Claim or Interest.

12.2     *Setoffs and Recoupments.*  The Debtor may, but shall not be required to, set off against or recoup from any Claim and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, Claims of any nature whatsoever that the Debtor or anyone of them may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or anyone of them of any such Claim that the Debtor or anyone of them may have against such Holder.

12.3    _Captions_.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

12.4    _Binding Effect_.  Upon the entry of the Confirmation Order, all provisions of the Plan shall be binding upon, and shall inure to the benefit of, the Debtor, the Reorganized Debtor, the Holders of Claims and Equity Interests, and such Persons' respective successors and assigns.

12.5    _Governing Law_.  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the laws of the State of Minnesota shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

12.6    _Timing of Distributions_.  Any payment or distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

12.7    _Compliance with Reporting Requirements_.  All post-confirmation reporting requirements, if any, shall also be complied with, including the reporting of disbursement activity.

12.8    _Revocation or Withdrawal of Plan_.

(a) The Proponent reserves the right, to revoke or withdraw the Plan prior to the Effective Date. If the Plan is revoked or withdrawn, then the result shall be the same as if the Confirmation Order was not entered and the Effective Date did not occur as to the Debtor. The Confirmation Order shall be null and void and of no effect if the Plan is terminated after the Confirmation Date but before the Effective Date.

(b) If the Plan is revoked or withdrawn prior to the Confirmation Date, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of such entity or any Person in any further proceedings involving such entity or Person.

12.9    _Nonmaterial Modifications_.  The Proponent may, with the approval of the Bankruptcy Court and without notice to Holders of Claims and Equity Interests, correct any nonmaterial defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.

12.10    _Material Modifications_.  Modifications of this Plan may be proposed in writing by the Proponent, at any time before Confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor has complied with section 1125 of the Bankruptcy Code. This Plan may be modified at any time after Confirmation and before any distributions are made pursuant to the Plan, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under

- 13 -

section 1129 of the Bankruptcy Code and the circumstances warrant such modification.

12.11   *Corporate Governance*.   Upon the occurrence of the Effective Date, Reorganized MFIM's Board of Directors will remain to exist and govern in the same capacity and manner as existed prior the filing date and shall have full control and authority over the Property of the Estate of MFIM, which shall continue in existence following the Effective Date without the need for Bankruptcy Court approval pursuant to Section 363 or 330 of the Bankruptcy Code, or any other provision of court or United States trustee control or oversight during a chapter 11 case, including but not limited to policy making, day-to-day operations, financing, transactional, corporate governance, and any and all other corporate activity, and all corporate activity.

## ARTICLE 13
## PROVISIONS GOVERNING DISTRIBUTION

13.1   *Distributions*.   Any payment or distribution pursuant to this Plan, to the extent posted in the United States Mail, shall be deemed made when deposited into the United States Mail. Payments of Cash shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

13.2   *Delivery of Distributions*.   Distributions and deliveries to Holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs filed by such Holders (or at the last known addresses of such Holders if no proof of Claim is filed; or if the Debtor or the applicable MFMI have been notified of a change of address, at the address set forth in such notice).

13.3   *Manner of Payment*.   At the option of MFIM, any Cash payment to be made to any Person pursuant to the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

## ARTICLE 14
## DISCHARGE

14.01   *Discharge*.   On the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

- 14 -

By: _____

**Brenda Colston**
For Mighty Fortress International
Ministries, Inc.

/e/ **David E. Flowers**
_____
**David E. Flowers 022618X**
Attorney for the Plan Proponent

**EXHIBIT B**

ASSETS OF DEBTOR

1.  Chairs                         $500.00

2.  Non-fixtured speakers          $2000.00

3.  Sound Equipment                $500.00