UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Mighty Fortress International Ministries, Inc.

Debtor.

Case No. 10-48691-DDO
Chapter 11

## NOTICE OF HEARING AND FOUNDATION CAPITAL RESOURCES, INC.'S MOTION FOR CONTEMPT, SANCTIONS, APPOINTMENT OF A TRUSTEE AND TO DISMISS

**TO: Debtor, Dr. Tom R. Williams, President, Sabrina R. Williams, Vice-President, Isabel Parker, Treasurer, Teretha Dillard, Treasurer, and Brenda Colston, Executive Secretary and other interested parties specified in Local Rule 9013-3.**

1.      Foundation Capital Resources, Inc. a secured creditor of Debtor herein, by its undersigned attorney, moves the Court for the relief stated herein and gives notice of hearing herewith.

2.      The Court will hold a hearing on this motion at **10:30 a.m.** on **April 7, 2011**, at U.S. Bankruptcy Court, US Courthouse, Courtroom 2B, 316 N. Robert Street, St. Paul, Minnesota 55101, or as soon thereafter as counsel can be heard.

3.      Any response to this motion must be filed and delivered not later than April 4, 2011, which is three (3) days (excluding Saturdays, Sundays, and holidays) before the time set for the hearing or filed and served by mail not later than March 31, 2011, which is seven (7) days before the time set for the hearing (excluding Saturdays, Sundays and holidays). **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY**

**FILED, THE COURT MAY GRANT THE REQUESTED RELIEF WITHOUT A HEARING.**

4.     This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, FRBP Nos. 5005 and Local Rule 1070-1. This is core proceeding. The Petition commencing this case was filed on November 22, 2010, and is now pending in this Court.

5.     This motion arises under 11 U.S.C. § 362(c), 11 U.S.C. §1112 and FRBP No. 4001, and is filed under FRBP No. 9014, 9020 and Local Rules 9006-1 and 9013-1 to 9013-3.

6.     Foundation Capital requests Debtor be found in contempt for willfully and wantonly using cash collateral in violation of 11. U.S.C. § 362(c) without the secured creditor's express permission or Order of the Court, for sanctions for the willful and wanton conversion of the cash collateral and to dismiss the petition.

7.     Foundation Capital is a secured creditor of Debtor and claims a perfected first priority security interest in all income of the Debtor, the rents, issues, royalties, income, revenue, profits and other benefits of the Property.

8.     Foundation Capital is the Debtor's single largest creditor holding the only secured claim in the estimated amount of $6,000,000.00 and an unsecured claim estimated at $2,400,000.00, representing over 95% of the Debtor's unsecured liabilities and over 96% of the Debtor's total liability.

9.     Debtor executed and delivered to Foundation Capital on or about July 6, 2007, a Construction Loan Agreement ("Agreement") and an Adjustable Rate Secured Note ("Note") dated July 6, 2007, in the principal sum of SIX MILLION FOUR HUNDRED THOUSAND AND 00/100 ($6,400,000.00) (collectively referred to as the "Loan

Documents"). A true and correct copy of the Loan Documents are attached and incorporated herein by reference as **Exhibit A**.

10.     To secure the indebtedness evidenced by the Loan Documents, Debtor executed and delivered to Foundation Capital that certain Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage") dated July 6, 2007, filed July 6, 2007, as Document No. 9003758 in the office of the Hennepin County Recorder. A true and correct copy of the Mortgage is attached an incorporated herein by reference as **Exhibit B**.

11.     Pursuant to the Mortgage, in addition to assigning its interest in the rents, issues, royalties, income, revenue, profits and other benefits of the Property (collectively "Rents"), Debtor conveyed to Foundation Capital a security interest in the following:

(a) All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the land as described in Exhibit "A" ("Property"), and all fixtures, machinery, equipment, building materials, appliances and goods of every nature now or hereafter located on or upon, or intended to be used in connection with, the Land or the improvements thereon, including, but not by way of limitation, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators and related machinery and equipment; all plumbing; and all personal property and fixtures of every kind and character now or at any time hereafter located in or upon the Land or the improvements thereon, of which may now or hereafter be used or obtained in connection therewith, including without limitation, fixtures, machinery, equipment, appliances, vehicles (excluding Debtor's personal automobiles, if any), building supplies and materials, books and records, chattels, inventory, accounts, farm products, consumer goods, general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Debtor and located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land or any improvements thereon, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of any of the foregoing, and all the right, title and interest of Debtor in any such fixtures, machinery, equipment, appliances, vehicles and personal property subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposit or payments now or hereafter made by Debtor or on behalf of Debtor, all trade names, trademarks, service marks, logos and goodwill related

thereto which in any way now or hereafter belong, relate or appertain to the Land or any improvements thereon or any part thereof or are now or hereafter acquired by Debtor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, farm products, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described herein, and all other interests of every kind and character in all of the real, personal, intangible and mixed properties described herein which Debtor may now own or at any time hereafter acquire, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land and a part of the Land as between the parties hereto and all persons claiming by, through or under them.

(b) All of the interest of Debtor in all easements, rights-of-way, licenses, operating agreements, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, oil and gas and other minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions and remainders, whatsoever, in any way belonging, relating or appertaining to the Land or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Debtor.

(c) **All income (but not limited to, all revenues, pledges, income, gifts, donations and offerings from whatever source owned by Debtor), rents issues, royalties, profits, revenues and other benefits of the Land from time to time accruing, all payments under leases or tenancies, proceeds of insurance, condemnation awards and payments and all payments on account of oil and gas and other mineral leases, working interests, production payments, royalties, rents, delay rents, operating interests, participating interests and other such entitlements, and all the estate, right, title interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Debtor of, in and to the same (hereinafter collectively referred to as the "Revenues"); reserving only the right to Debtor to collect the Revenues as provided in the Deed of Trust, Assignment of Leases and Rents and Security Agreement executed by Debtor in favor of Secured Party.**

(d) All construction or development contracts, subcontracts, architectural agreements, labor, material and payment bonds, and plans and specifications relating, to the construction of improvements on the Land including, without limitation (i) any engineering or architectural agreements entered into with respect to the design and other engineering or architectural services; (ii) the plans and specifications for the construction of said improvements prepared by any engineer or architect; and (iii) any agreements entered into with contractors, suppliers, materialmen or laborers with respect to construction of improvements on the Land.

(e) If applicable, any and all management contracts, agreements, or other

correspondence entered into by and between Debtor and third parties for the management of the collateral secured hereby.

(f) Together with any and all additional items of personal property, furnishings, fixtures, equipment, furniture, trade fixtures, and other items of property not heretofore referenced above, including any and all musical instruments, pews, chairs, pulpits, podiums, desks, office furniture, classroom furnishings and materials, dormitory furniture, furnishing and materials, computer equipment and all other items used in connection with the operation of the premises as a college and for related college functions.

(the "Personal Collateral") emphasis added.

12.    Foundation Capital perfected its interest in the Personal Collateral by recording a UCC Financing Statement in the office of the Hennepin County Recorder on July 6, 2007, as Document No. 9003759 and filing a UCC Financing Statement in the Minnesota Central Filing System on July 23, 2007, as filing number 200717613299 (collectively referred to as "Financing Statements"). A true and correct copy of the Financing Statements are attached and incorporated herein by reference as **Exhibit C**.

13.    11 U.S.C. § 362(c) prohibits a Debtor from using cash collateral without an Order of the Court or the express permission of the secured creditor.

14.    Dr. Tom R. Williams, President, Sabrina R. Williams, Vice President, Isabel Parker, Treasurer, Teretha Dillard, Treasurer, and Brenda Colston, Executive Secretary are the Managers of the Mighty Fortress during the Chapter 11 case.

15.    Despite the prohibition of 11 U.S.C. §363(c), the Managers have ignored the statutory prohibition of using cash collateral by distributing $26,273.00 during the month of December and $59,518.71 during the month of January.

16.    Neither Debtor nor the Managers had any authority from Foundation Capital for the distributions as evidenced by the Monthly Operating Reports it filed in February of 2011 as documents 18 and 25.

17.    Furthermore, Foundation Capital was unaware of the distributions until the Debtor filed the Operating Reports in February of 2011.

18.    Foundation Capital believes the Debtor has continued to make post-petition distributions from the cash collateral without Foundation Capital's permission or court order.

19.    In addition to distributing the income cash collateral, Debtor has distributed and disbursed the post petition Rents in which Foundation Capital also has a perfected security interest in.

20.    As evidenced by the Operating Reports filed by Debtor, Excell Academy for Higher Learning has paid $12,864.00 per month to Debtor in rent for use of the property as a school. The total post-petition rents received by the Debtor total $51,456.00.

21.    Debtor has used the cash collateral for its own purposes including compensating post-petition creditors and paying expenses thereby creating a diminution of the bankruptcy estate and failing to adequately protect Foundation Capital's security interest in the cash collateral.

22.    The Managers have converted the cash collateral for their own interest.

23.    The Managers distributed $9,500.00 to Dr. Thomas R. Williams, $1,000.00 to Brenda Colston, and $860.00 to Isabel Parker per month since the filing of the Petition.

24.    The Managers should be held personally liable to Foundation Capital for the amounts of cash collateral they have converted to their personal use since the filing of the Petition.

25.    Debtor's violation of the statute and willful conversion of the cash collateral to the personal use of insiders illustrates bad faith in filing the bankruptcy petition.

26.    Despite receiving over $80,000.00 in income, the Debtor has not made any adequate protection payments to Foundation Capital, while converting its cash collateral to its own use and the personal use of the Managers.

27.    Although the Bankruptcy Code provides no specific remedy for the misuse of cash collateral this Court should dismiss the bankruptcy for cause pursuant to 11 U.S.C. § 1112(b) and find the Managers personally liable for the amounts they have converted to personal use.

28.    Where a debtor has violated a cash collateral order or made unauthorized expenditures out of cash collateral the traditional remedy is the dismissal of the case, as in In re Alvey, 56 B.R. 170 (Bankr. W.D.Ky. 1985).

29.    As a result of the Debtor's continued violation of the statute and use of cash collateral, Debtor must be prohibited from making further post-petition distributions, including distributions to the Managers and insiders.

30.    Should the Court decide against dismissing the case, Foundation Capital requests a Trustee be appointed to manage and oversee the income and expenditures of the Debtor.

31.    In addition to repaying the amounts the Managers have converted to their personal use, the Managers should be ordered to repay Foundation Capital's costs, expenses of litigation and reasonable attorney fees for having brought this motion.

WHEREFORE, Foundation Capital, by its undersigned attorney, moves the Court for an Order:

a)    Finding the Managers in Contempt for their willful and wanton use of the cash collateral in violation of 11 U.S.C. § 363(c),

b)   Sanctioning the Defendant and the Managers for their violation of 11 U.S.C. § 363(c),

c)   Holding the Managers personally liable for the amounts of cash collateral they have converted to their own personal use in violation of 11 U.S.C. § 363(c),

d)   Requiring the Managers to pay Foundation Capital's costs and fees of litigation including but not limited to its reasonable and necessary attorney fees,

e)   Dismissing the Case for cause pursuant to 11 U.S.C. § 1112(b),

f)   In the alternative to dismissing the case, appointing a trustee, and

g)   Granting any other additional relief the Court deems just and proper.

**ECKBERG, LAMMERS, BRIGGS,
WOLFF & VIERLING, PLLP**

Dated:  March 21, 2011.

By:  */e/ Nicholas J. Vivian*
Nicholas J. Vivian (#0333669)
*Attorneys   for   Creditor   Foundation
Capital Resources, Inc.*
1809 Northwestern Avenue
Stillwater, MN 55082
(651) 439-2878

## VERIFICATION

I William A. Hunt, Jr., Vice President of Foundation Capital Resources, Inc., the Movant herein, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Foundation Capital Resources, Inc.

Dated: March 25, 2011

By: William A. Hunt, Jr.
Its: Vice President

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Mighty Fortress International Ministries, Inc.

Case No. 10-48691-DDO
Chapter 11

     Debtor.

MEMORANDUM OF LAW IN SUPPORT OF FOUNDATION CAPITAL
RESOURCES, INC.'S MOTION FOR CONTEMPT, SANCTIONS, APPOINTMENT
OF A TRUSTEE AND TO DISMISS

## INTRODUCTION

Foundation Capital Resources, Inc. ("Foundation Capital") by and through its attorneys Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, hereby files its Memorandum of Law in Support of Foundation Capital Resources, Inc.'s Motion for Contempt, Sanctions, Appointment of a Trustee and Motion to Dismiss. The relevant facts are outlined in the Notice of Hearing and Motion for Contempt of Court filed herewith.

## ARGUMENT

**1. THE COURT SHOULD FIND DR. THOMAS R. WILLIAMS, SABRINA R. WILLIAMS, ISABEL PARKER, TERETHA DILLARD AND BRENDA COLSTON IN CIVIL CONTEMPT OF COURT FOR VIOLATING A SPECIFIC PROVISION OF THE BANKRUPTCY CODE OF WHICH THEY WERE AWARE OR SHOULD HAVE BEEN AWARE.**

A bankruptcy court has the power to issue an order of contempt. *Koehler v. Grant*, 213 B.R. 567, 570 (8th Cir. 1997). Section 105(a) of the Bankruptcy Code provides, in relevant part:

> The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105(a).

This Court has the inherent power of to sanction for contempt. *In re Williams*, 191 B.R. 497 (Bankr. M.D.Ga., 1996) citing *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567 (11th Cir. 1995). In *Mroz*, the Court summarized the inherent power to include by citing, *Chambers v. Nasco [NASCO], Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed2d 27 (1991) as follows:

> [C]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution, 'powers' which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.' [citations omitted]. These powers are necessarily vested in courts to manage their affairs to "achieve the orderly and expeditious disposition of cases.
> However, because of their potent nature, "inherent powers must be exercised with restraint and discretion." [citations omitted]. "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."

Sanctions may be imposed against those responsible for the use of cash collateral after a Title 11 case has been filed where there has been no compliance with § 362(c)(2). *In re AG Service Centers, L.C.* 239 B.R. 545 (Bankr. W.D. Mo. 1999). See also, *Mercantile National Bank at Dallas v. Aerosmith Denton Corp. (In re Aerosmith Denton Corp.)*, 36 B.R. 116, 119-20 (Bankr.N.D. Tex. 1983); *Midwest Properties, No. Two v. Big Hill Investment, Co. Inc.*, 93 B.R. 357, 362-63 (N.D.Tex 1988).

In this case, the Debtor has been controlled and managed since the filing of the petition for relief by Dr. Thomas R. Williams, President, Sabrina R. Williams, Vice-President, Isabel Parker, Treasurer, Teretha Dillard, Treasurer, and Brenda Colston, Executive Secretary. Furthermore, during the course of the bankruptcy the Debtor has been represented by counsel, Attorney David E. Flowers. In filing the petition for relief under Chapter 11 of the Bankruptcy Code, Debtor is required to comply with the

provisions therein. The Debtor owes a fiduciary duty to its creditors and is vested with all the powers and duties of a trustee, and therefore must be held to the high standards of accountability the title connotes. *In re Alvey*, 56 B.R. 170 (Bankr. W.D. Ky. 1985). Debtor and Managers were aware of Foundation Capital's secured claim as it is clearly listed in the List of Creditors Holding 20 Largest Unsecured Claims as having a secured claim and listed on Schedule A attached to the Voluntary Petition.

The managers cannot argue that the statute is unclear or they did not have knowledge of Foundation Capital's security interest. The Managers are clearly prohibited from using cash collateral without Foundation Capital's consent or Order of the Court. The Managers have not sought the necessary relief from the Court or Foundation Capital.

The Court may levy a fine against the party in contempt, which is payable to the moving party, or the Court may order imprisonment. *United States v. Open Access Technology International, Inc.*, 527 F.Supp.2d 910, 912 (D.Minn. 2007). Foundation Capital submits its attorney's fees, estimated to be $1,500.00 should be repaid by the Managers personally.

In addition to requiring the Managers to repay the costs and expenses of bringing this motion, the Court may hold the debtor's officers personally liable for conversion for the misuse of the cash collateral. *Matter of Koran Enterprises, Inc.*, 61 B.R. 321, 326-327 (Bankr. W.D. Mo. 1986) and *In re Etch-Art, Inc.*, 48 B.R. 143 (Bankr. D.R.I. 1985). In this case, the Managers should be required to repay the amounts they have personally converted to their individual use and should be held jointly and severally liable with the Debtor to Foundation Capital for the amounts converted in violation 11 U.S.C. 363(c), estimated at $85,791.72 as of January 31, 2011.

2. **THE COURT SHOULD DISMISS THE PETITION FOR CAUSE.**

A secured creditor has not a simple money demand but a property right enjoying protection of federal constitutional rank. *Continental Illinois Bank & Trust Co. v. Chicago R.I. & Pac. Ry. Co.*, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 110 (1935). The debtor is required to protect the secured property rights as commanded in 11 U.S.C. § 363(c), and is required to receive the creditor's consent or prior court approval to using cash collateral. "In the well-managed Chapter 11 case the 'motion to use cash collateral' is the very first pleading to be filed by the highly-leveraged debtor." *In re Alvery*, at 172-173. Traditional creditor remedies for the unauthorized use of cash collateral are dismissal of the Chapter 11 proceeding or relief from the 11 U.S.C. §362 automatic stay to allow direct nonbankruptcy action against the collateral. *Id.* at 173.

In the case at hand, the Debtor and its Managers have clearly breached the duties and responsibilities imposed on a Debtor in a bankruptcy while clearly attempting to fruitfully enjoy the benefits to a Debtor under a Chapter 11. The Debtor has not paid any sums to Foundation Capital to adequately protect its interest and instead has created a vast diminution of the estate each month by converting the cash collateral to the Debtor's use. Perhaps even more troubling is the boldness by with the Managers converted the funds to their personal benefit. Each and every month the Managers have received individual compensation, Dr. Thomas R. Williams has converted nearly $10,000.00 per month for his own personal use.

The Bankruptcy Code in section 1112 provides in part that a court may dismiss a case under this chapter, …, for cause, including:

> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors; [or]

(4) failure to propose a plan under section 1121 of this title within any time period fixed by the court.

(5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan;

(9) termination of a plan by reason of the occurrence of a condition specified in the plan; or

(10) nonpayment of any fees or charges required under chapter 123 of title 28.

This list is an illustrative, and not exhaustive. *In re C-TC 9th Avenue Partnership,* 113 F.3d 1304 (2nd Cir. 1997). In this case, there has clearly been a diminution of the bankruptcy estate. The Debtor and Managers have converted the cash collateral of the Debtor to its own use and frustrated Foundation Capital's security interest. The continued disregard for the Debtor in Possession's obligation to protect the interests of the secured creditors is clearly cause sufficient for this Court to dismiss the bankruptcy case.

Secondly, there is no reasonable likelihood of reorganization. The Debtor's plan and the proofs of claim clearly indicate the Debtor will not be capable of obtaining confirmation of the Plan over the objection of Foundation Capital. Foundation Capital will object to any plan of reorganization which does not pay it in full. Foundation Capital represents the Debtor's only secured creditor and its unsecured claim of $2,437,380.22

represents 95% of the total unsecured claims filed. This Court found in *In re Lumber Exchange Ltd. Partnership*, 125 B.R. 1000 (Bkrtcy.D.Minn. 1991) decision affirmed, *In re Lumber Exchange Ltd. Partnership*, 968 F.2d 647 (8th Cir. 1992) where a creditor represents 97% of the claims and the only beneficiaries in the cramdown of such a plan would be the 3% minority members of a group of substantially similar claims, the cramdown would not be fair and equitable. Similarly in the instant case, Foundation Capital represents 95% of the unsecured claims and will not consent to a plan which does not pay its claim in full, and there are no other impaired classes which could approve the plan. There does not exist an impaired class which will accept the plan.

## 3.  IN THE ALTERNATIVE TO DISMISSING THE CASE THE COURT SHOULD APPOINT A TRUSTEE

The appointment of a Chapter 11 trustee is considered an extraordinary measure as the presumption in Chapter 11 cases is the 'current management' is generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate. *Petit v. New England Mortgage Services, Inc. (In re Petit)*, 182 B.R. 64, 68-69 (D.Me. 1995). A party seeking removal of the debtor in possession and appointment of a Chapter 11 trustee has the burden of establishing cause, including fraud, dishonesty, incompetence or gross mismanagement or such appointment is in the interests of creditors. 11 U.S.C. § 1104. A debtor in possession while receiving the benefits of the Bankruptcy Code also assumes the numerous obligations and responsibilities contained therein.

Debtor's inability to comply with the Bankruptcy Code, specifically, 11. U.S.C. § 362(c) and the conversion of cash collateral for personal use shows the Debtor and the Managers incompetence, dishonesty and inability to comply with the Bankruptcy Code

such that cause exists to warrant the establishment of a Chapter 11 Trustee. The non-compliance has already resulted in the diminution of the estate by more than $85,791.72 to the detriment of the creditors. Furthermore, the cash collateral has been willfully converted to the personal use of the Managers in violation of the Bankruptcy Code. Counsel for Foundation Capital has notified Debtor's counsel of the lack of consent from Foundation Capital; however the continued use of the cash collateral has continued. Based on the Debtor's inability to comply with the Bankruptcy Code and conversion of cash collateral for personal use, a Chapter 11 Trustee must be appointed.

## CONCLUSION

Based on the above, Foundation Capital requests the Court find the Debtor, Dr. Thomas R. Williams, President, Sabrina R. Williams, Vice-President, Isabel Parker, Treasurer, Teretha Dillard, Treasurer, and Brenda Colston, Executive Secretary in civil contempt of Court. Foundation Capital also respectfully requests the Court hold Debtor and the Managers jointly and severally liable for the conversion of cash collateral without Foundation Capital's express permission, and require the Debtor and Managers reimburse the Estate an amount sufficient to prevent the diminution of the estate. It further requests the Court sanction the Debtor and Managers in an amount the Court deems just and proper, and require the Managers to reimburse the estate within fifteen (15) days hereof the full amount of funds they have converted for their personal use since the date of the Petition. Finally, Foundation Capital requests the Court award Foundation Capital all of its costs and fees incurred in bringing this motion. In the alternative Foundation Capital requests the Court dismiss the Petition for cause based on the Debtor's and Managers' improper use of the cash collateral.

**ECKBERG, LAMMERS, BRIGGS,
WOLFF & VIERLING, PLLP**

Dated:  March 21, 2011.

By:  <u>/e/ Nicholas J. Vivian</u>
Nicholas J. Vivian (#0333669)
*Attorneys   for   Creditor   Foundation
Capital Resources, Inc.*
1809 Northwestern Avenue
Stillwater, MN 55082
(651) 439-2878

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Mighty Fortress International Ministries, Inc.
    a.k.a. Mighty Fortress Church

        Debtor.

Case No. 10-48691-DDO
Chapter 11

## UNSWORN DECLARATION FOR PROOF OF SERVICE

The undersigned, an employee of Eckberg, Lammers, Briggs, Wolff & Vierling, PLLP, declares that on March 18, he served the following documents:

1. Foundation Capital Resources, Inc.'s Motion for Contempt, Sanctions, Appointment of a Trustee and to Dismiss.
2. Memorandum of Law of Law in Support of Foundation Capital Resources, Inc.'s Motion for Contempt, Sanctions, Appointment of a Trustee and to Dismiss.
3. Unsworn Declaration for Proof of Service, and
4. Proposed Order.

upon each of the entities named below, by U.S. mail by mailing to each of them a copy thereof by enclosing the same in an envelope with first class postage prepaid and depositing the same in the post office as Stillwater, Minnesota, addressed to each of them as follows:

See attached Creditor Matrix

and delivered by email notification under CM/ECF on the day efiled with the Court to each of the parties which have elected to receive notification via email through the CM/ECF system.

                        **ECKBERG, LAMMERS, BRIGGS,**
                        **WOLFF & VIERLING, P.L.L.P.**

Dated:  March 25, 2011

           By: /e/ Chad H. Gamradt
               Chad H. Gamradt

David E. Flowers
Flowers Law Office
7616 Currell Blvd.
Suite 200
Woodbury, MN  55125

Mighty Fortress International Ministries, Inc
6400 85th Ave N
Brooklyn Park, MN  55445-3000

Abram, Edwards & York, LLC
1850 N Kolb Road Suite 132
Tucson AZ 85715

Advanta Bank
PO Box 30714
Salt Lake City UT 84130-0714

Damon Ward
431 S 7th St, Suite 2485
Minneapolis MN 55415

Hellmuth & Johnson, PLLC
10400 Viking Drive Suite 500
Eden Prairie MN 55344

Internal Revenue Service
P O Box 21126
Philadelphia PA 19114

John A Halpren & Associates
500 Plymouth Building
12 S 6th St
Minneapolis MN 55402-1510

Leonard, Street and Deinard
Attn: Ryan Stai
150 S 5th Street, Suite 2300
Minneapolis MN 55402

Miller Architects & Builders
PO Box 1228
Saint Cloud MN 56302

Reach Communications Inc
8823 Zealand Ave N, Suite R
Brooklyn Park MN 55445-1800

SAUDER MANUFACTURING CO
JOHN HALPERN
500 PLYMOUTH BLDG
12 S 6TH ST
MPLS MN 55402

Sauder Worship Seating
930 W Barre Road
Archbold OH 43502

Stage Technology, Inc
2518 N 2nd Street Suite 116
Minneapolis MN 55411-1632

Stageright Corporation
495 Pioneer Parkway
Clare MI 48617

US Trustee
1015 US Courthouse
300 S 4th St
Minneapolis, MN  55415

Dr. Tom R. Williams, President
Mighty Fortress International Ministries, Inc
6400 85th Ave N
Brooklyn Park, MN  55445-3000

Sabrina R. Williams, Vice-President
Mighty Fortress International Ministries, Inc
6400 85th Ave N
Brooklyn Park, MN  55445-3000

Isabel Parker, Treasurer
Mighty Fortress International Ministries, Inc
6400 85th Ave N
Brooklyn Park, MN  55445-3000

Teretha Dillard, Treasurer
Mighty Fortress International Ministries, Inc
6400 85th Ave N
Brooklyn Park, MN  55445-3000

Brenda Colston, Executive Secretary
Mighty Fortress International Ministries, Inc
6400 85th Ave N
Brooklyn Park, MN  55445-3000

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Mighty Fortress International Ministries, Inc.

Debtor.

Case No. 10-48691-DDO
Chapter 11

## ORDER

This case is before the court on the motion of Foundation Capital Resources, Inc.
seeking an order holding Debtor in civil contempt of court

Based on the motion and file, IT IS ORDERED:

1. Debtor, Dr. Thomas R. Williams, Sabrina R. Williams, Isabel Parker, Teretha
   Dillard and Brenda Colston (collectively referred to without the Debtor the
   "Managers") are in civil contempt of the Bankruptcy Code, specifically 11 U.S.C.
   § 363(c) for unauthorized use of cash collateral.

2. Debtor must repay to Foundation Capital all amounts improperly converted to its
   own use to Foundation Capital within fifteen (15) days of the date hereof or risk
   being in further contempt of this court.

3. Managers must repay to Foundation Capital all amounts personally received from
   Debtor since November 22, 2010 within fifteen (15) days of the date hereof or
   risk being in further contempt of this court.

4. Debtor and Managers are jointly and severally liable to Foundation Capital for all
   amounts converted in violation of 11 U.S.C. § 363(c) in the amount of
   _____.

5. Each Manager shall pay to Foundation Capital as and for sanctions for violation of 11 U.S.C. § 363(c) the amount of

6. Foundation Capital is awarded its costs and fees incurred in bringing this motion. Debtor shall pay $_____ to Foundation Capital by way of check made payable to "Foundation Capital Resources" on or before April 30, 2011.

BY THE COURT:

Dated: _____

_____
Dennis D. O'Brien
U.S. Bankruptcy Court Judge