# EXHIBIT A

# ADJUSTABLE RATE SECURED NOTE

$6,400,000.00

July 6, 2007
Hennepin County, Minnesota

**FOR VALUE RECEIVED, MIGHTY FORTRESS INTERNATIONAL MINISTRIES, INC.**, a Minnesota nonprofit corporation, 6500 85th Avenue North, Brooklyn Park, Minnesota 55334 (the "Borrower"), promises to pay in legal tender of the United States to the order of **FOUNDATION CAPITAL RESOURCES, INC.**, a Georgia corporation, and its successors and assigns (collectively, the "Lender"), at the address of 1661 North Boonville Avenue, Springfield, Missouri 65803, or at such other place as the Lender may designate in writing, the principal sum of SIX MILLION FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($6,400,000.00), or so much thereof as may be advanced from time to time, together with interest as hereinafter provided (the "Interest Rate") on the unpaid principal balance from the date hereof, to be paid as set forth herein.

Interest will be charged on unpaid principal until the full amount of principal has been paid. During construction, Borrower will pay interest at an initial rate of nine and seven-tenths percent (9.7%) per annum. Upon conversion to permanent financing, Borrower will pay interest at the rate of nine and one-quarter percent (9.25%) per annum. The interest rate Borrower will pay will change in accordance with the terms of this Note as set forth herein below. Interest shall be computed hereunder with respect to each day during the term of this Note by multiplying the outstanding principal balance due hereunder on that day by a daily interest factor, which daily interest factor shall be calculated (on the basis of a year of 365 days) by dividing the aforesaid per annum interest rate by 365. Interest so computed shall accrue for each and every day on which any indebtedness remains outstanding hereunder, including the day on which funds are initially advanced regardless of the time of day such advance is made, and including the day on which funds are repaid unless repayment in federal funds immediately available in the city in which Lender or its agent servicing this loan are located, is received by Lender prior to 2:00 p.m., local time in such city.

Commencing on August 15, 2007, and continuing on the same day of each succeeding month thereafter up to and including December 15, 2008, the Borrower shall pay monthly installments of interest only. On January 15, 2009, all accrued interest and any other charges, as described herein below, shall be due and payable in full. In the event that no Event of Default then exists under the Security Instrument (hereinafter defined) securing this Note, this loan shall convert to permanent financing with payments as hereinafter provided. If any Event of Default exists under said Security Instrument, this loan and the outstanding indebtedness may, in Lender's sole discretion, be accelerated and be due and payable in full.

Upon conversion to permanent financing, Borrower will make two hundred thirty-nine (239) monthly payments of principal and interest, based on a loan amortization of thirty (30) years, on the 15th day of each month beginning on February 15, 2009, and will make a final payment of all outstanding principal and accrued outstanding interest, together with accrued and unpaid late fees and other charges on the Maturity Date, as said item is hereinafter defined. Borrower will make said payments every month until Borrower has paid all of the principal and interest and any other charges described below that Borrower may owe under this Note. Borrower's monthly payments will be applied first to interest, then to principal, and finally to late fees and other charges. If on January 15, 2029, Borrower still owes amounts under this Note, Borrower will pay those amounts in full on that date, which is called the **'Maturity Date.'**

Each of Borrower's initial monthly payments will be in the amount of FIFTY-TWO THOUSAND SIX HUNDRED FIFTY-ONE AND 21/100 DOLLARS ($52,651.21) based on said thirty (30) year amortization. This amount may change on the Change Date, as said term is hereafter defined, based on changes in the unpaid principal amount of Borrower's Loan and changes in the interest rate that Borrower must pay. Lender will determine Borrower's new interest rate and the changed amount of Borrower's monthly payments in accordance with the terms of this Note as set forth herein below.

The interest rate Borrower will pay may change on August 15, 2010, and on that day every thirty-six (36) months thereafter. Each date on which Borrower's interest rate could change is called a "**Change Date**." Beginning with the first Change Date, Borrower's interest rate will be reset at a rate equal to the then prevailing interest rate charged by the Noteholder on similar loans as established by Noteholder's internal rate committee effective at the Change Date. This rate will be Borrower's new interest rate until the next Change Date. The Lender will then determine the amount of the monthly payment based on the remaining term of the original amortization period at Borrower's new interest rate. The result of this calculation will be the new amount of Borrower's monthly payment. The Lender will give Borrower notice of this change.

Except as herein provided, under no circumstances and at no time will the interest rate on this Note be less than nine and one-quarter percent (9.25%) per annum except as may otherwise be agreed to in writing. Under no circumstances and at no time with the interest rate on this Note be more than the maximum rate allowed by Law.

Lender and Borrower agree that the Note may be prepaid in whole or in part, without penalty, provided that the prepayment is not made with funds borrowed by or for the benefit of Borrower or an affiliated or related entity of the Borrower ("Borrowed Funds"). Prepayment resulting from donations or offerings made to the Borrower or from the sale of the Property to an unrelated and unaffiliated entity shall not be considered prepayment from Borrowed Funds.

If Borrower makes a full prepayment of the Note with Borrowed Funds (i) within the first twelve (12) months from the date of the Note, there will be a charge of four percent (4%) of the principal balance of the Note as a prepayment charge; (ii) during the 13th month through the 24th month from the date of the Note, there will be a charge of three percent (3%) of the principal balance of the Note as a prepayment charge; (iii) during the 25th month through the 36th month from the date of the Note, there will be a charge of two percent (2%) of the principal balance of the Note as a prepayment charge; (iv) during the 37th through the 48th month from the date of the Note, there will be a charge of one percent (1%) of the principal balance of the Note as a prepayment charge. If the Borrower makes a full prepayment after the 48th month from the date of the Note, there shall be no prepayment charge, whether or not said repayment is made with Borrowed Funds.

Prepayments shall be applied against the outstanding principal balance of this Note and shall not extend or postpone the due date of any subsequent monthly installments or change the amount of such installments, unless the Lender shall agree otherwise in writing. The Lender may require that any partial prepayments be made on the date monthly installments are due and be in the amount of that part of one or more monthly installments which would be applicable to principal. Prepayments shall include a payment arising from the acceleration of the Note by the Lender as a result of event(s) of default under the terms of the Loan Documents.

This Note is secured by, and Lender is entitled to the benefits of, the Security Instrument, the Absolute Assignment and the other Loan Documents (hereinafter defined). The term "**Security Instrument**" means the Mortgage, Assignment of Leases and Rents and Security Agreement dated the date hereof given by Borrower for the use and benefit of Lender covering the estate of Borrower in certain

premises as more particularly described therein (which premises, together with all properties, rights, titles, estates and interests now or hereafter securing the debt and/or other obligations of Borrower under the Loan Documents, are collectively referred to herein as the **"Property"**). The term **"Loan Documents"** refers collectively to this Note and the Security Instrument and all other documents executed in connection with this Note or now or hereafter executed by Borrower and/or others and by or in favor of Lender, which wholly or partially secure or guarantee payment of this Note or pertains to indebtedness evidenced by this Note.

A late charge of ten percent (10%) of the amount of the monthly payment as set forth herein, shall be paid to the Lender for any monthly payment not received within ten (10) days of the due date.

Should the Borrower default in the payment, as and when due, of the indebtedness evidenced hereby, or should any warranty or representation made by the Borrower hereunder or in any of the Loan Documents prove to be materially false or misleading, or should the Borrower default in the performance of any of the covenants, terms or conditions contained in the Loan Documents, then the entire unpaid principal balance of the indebtedness evidenced hereby, together with all interest accrued but unpaid thereon, and any and all sums advanced by the Lender to or in behalf of the Borrower under the provisions of the Loan Documents (even though the aggregate of such amounts may exceed the face amount of this Note) shall at the option of the Lender and without further demand or notice at once become due and payable and may be collected forthwith regardless of the stipulated date of maturity; and the entire principal amount outstanding shall accrue interest at a "Default Rate" equal to two percent (2.0%) above the Interest Rate being otherwise charged hereunder, as of the first day of the breach, at the option of the Lender, until paid.

It is further agreed that failure of the Lender to exercise this right of accelerating the maturity of the debt, or indulgence granted from time to time, shall in no event be considered as a waiver of such rights of acceleration or estop the Lender from exercising such right.

Time is of the essence of this Note.

Should this Note, or any part of the indebtedness evidenced hereby, be collected by law or through an attorney-at-law, the Lender shall be entitled to collect reasonable attorneys' fees and all costs of collection.

Except as otherwise expressly provided in the Security Instrument, no failure to accelerate the debt evidenced hereby by reason of default hereunder, acceptance of a past due installment, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or of the right of the Lender thereafter to insist upon strict compliance with the terms of this Note, or (ii) to prevent the exercise of such right of acceleration or any other right granted hereunder or by the laws of the state where the Property is located; and the Borrower hereby expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the foregoing. No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note shall operate to release, discharge, modify, change or affect the original liability of the Borrower under this Note, either in whole or in part unless the Lender agrees otherwise in writing. This Agreement supersedes all prior discussions and agreements between the parties hereto with respect to this transaction and all matters contained herein; and this Agreement contains the sole and entire understanding between the parties hereto. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

Presentment, notice of demand, notice of protest, notice of payment or non-payment, notice of dishonor, protest, and all other notices are hereby waived by the Borrower, and all sureties, guarantors, and endorsers hereof. The Borrower hereby waives and renounces for itself, its partners, successors and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now provided, or which may hereafter be provided by the Constitution and laws of the United States of America and of any state thereof, both as to itself and in and to all of its property, real and personal, against the enforcement and collection of the obligations evidenced by this Note. The Borrower hereby transfers, conveys and assigns to the Lender a sufficient amount of such homestead or exemption as may be set apart in bankruptcy, to pay this Note in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to the Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal thereof, and does hereby appoint the Lender the attorney-in-fact for the Borrower to claim any and all homestead exemptions allowed by Law.

This Note is intended as a contract under and shall be construed and enforceable in accordance with the laws of the State of Missouri.

If from any circumstances whatsoever, fulfillment of any provision of this Note or of any other instrument evidencing or securing the indebtedness evidenced hereby, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then, _ipso facto,_ the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Note or under any other instrument evidencing or securing the indebtedness evidenced hereby, that is in excess of the current limit of such validity, but such obligation be fulfilled to the limit of such validity.

As used herein, the terms "Borrower" and "Lender" shall be deemed to include their respective heirs, successors, legal representatives and assigns, whether by voluntary action of the parties or by operation of law. In the event that more than one person, firm or entity is a Borrower hereunder, then all references to "Borrower" shall be deemed to refer equally to each of said persons, firms, or entities, all of whom shall be jointly and severally liable for all of the obligations of the Borrower hereunder.

**IN WITNESS WHEREOF,** this Note has been duly executed by the undersigned on the date and year first above written.

BORROWER:

MIGHTY FORTRESS INTERNATIONAL MINISTRIES, INC.

By: _____
      Thomas R. Williams, President

ATTEST:

_____
Brenda J. Colston, Secretary

# CONSTRUCTION LOAN AGREEMENT

THIS AGREEMENT, made and entered into as of July 6, 2007, by and between **FOUNDATION CAPITAL RESOURCES, INC.,** a Georgia corporation (**"Lender"**), and **MIGHTY FORTRESS INTERNATIONAL MINISTRIES, INC.,** a Minnesota nonprofit corporation (**"Borrower"**);

## WITNESSETH:

In consideration of the mutual covenants and agreements hereinafter set forth, Lender agrees to make and Borrower agrees to accept a loan in accordance with and subject to the terms and conditions hereinafter set forth.

## ARTICLE I
## TERMS DEFINED

1.01    Terms Defined in Exhibit "A". In addition to the other terms hereinafter defined, the terms defined in Exhibit "A" attached hereto and incorporated herein by this reference shall have the meaning set forth in Exhibit "A." Where the meaning of any term is stated to be "NIA" or "None," provisions involving the application of that term shall be disregarded as to that term.

## ARTICLE II
## WARRANTIES AND COVENANTS OF BORROWER

Borrower hereby warrants to and covenants and agrees with Lender as follows:

2.01    Construction Contract. Borrower has entered into construction contract with Miller Architect & Builders, dated May 10, 2007, for construction of Improvements. The Construction Contract is still in full force and effect, and all work necessary for completion of Improvements is provided for in Construction Contract.

2.02    Commencement and Completion of Construction. Borrower will diligently pursue said construction to completion on or before the Completion Date in full compliance with all Requirements and with all terms and conditions of the Key Documents and the Loan Documents and without material deviation from the Plans and Specifications unless with the prior written approval of Lender. Borrower will enter into no material contract other than the contract with Miller Architect & Builders for Improvements to the Premises without the prior written approval of Lender.

2.03    Plans and Specifications. Borrower has furnished or will furnish Lender true and complete copies of the Plans and Specifications, which comply (and the Improvements when constructed in accordance with the Plans and Specifications, will likewise comply) with all applicable provisions of the Key Documents and with all applicable requirements, including those relating to erosion control, land use and development, subdivision of property, environmental matters, zoning, fire safety, or structural, architectural or other features of buildings or other improvements to property or the uses thereof (including those regulating or requiring access or special facilities for disabled persons). Borrower understands that no future draws following the initial draw to be made at closing will be made by Lender until Lender has received and approved Borrower's Plans and Specifications. The Premises do not constitute a phase or portion of a larger development, such that the sale of the Premises, separating the

Premises from such larger development, might constitute a subdivision requiring approval under any requirement. The building location and the site conditions are such that requirements relating to the filling, dredging, excavation or other usage of !ands classified as wetlands or lands which are subject to periodic flooding or have thereon standing or moving bodies of water are not applicable to the construction of the Improvements. No portion of the Improvements will be located in an area having special flood hazards according to the flood hazard boundary maps used by the United States Department of Housing and Urban Development in connection with the National Flood Insurance Program.

      2.04   <u>Utilities</u>. All utility services necessary for the construction of the Improvements and the operation thereof for their intended purposes are presently available to the boundaries of the Property through dedicated public rights-of-way or through perpetual private easements. No such utility services are subject to any moratorium, or would be subject to any presently threatened moratorium, imposed by any authority having jurisdiction.

      2.05   <u>Access</u>. The rights-of-way for all roads necessary for the full utilization of the Improvements for their intended purposes or required by any Key Document or other agreement affecting Borrower or the Premises have been dedicated to public use and accepted by the appropriate governmental authority, or are covered by private easements with respect to which the Security Instrument creates a valid, binding and enforceable first lien or first security title.

      2.06   <u>Application of Loan Proceeds</u>. Except as otherwise agreed by Lender in writing, Borrower will use the Loan proceeds solely for the purposes of paying outstanding Indebtedness, paying closing costs, and/or paying for the cost of construction of the Improvements and incidental costs relative thereto in accordance with the Construction Contract and as set forth in any applicable Draw Request.

      2.07   <u>Signs</u>. Any and all signs placed on the Premises to describe the Improvements or the development of the Premises shall, unless Lender shall otherwise determine, indicate in a manner satisfactory to Lender that construction financing is being provided by Lender. Furthermore, Borrower will maintain on a suitable site on the Property any sign furnished by Lender and approved by Borrower indicating that construction financing is being provided by Lender and will prevent the destruction or removal thereof.

      2.08   <u>Additional Documents</u>. Borrower shall furnish to Lender all instruments, documents, surveys, plans and specifications, soil tests, certificates, appraisals, title and other reports and do and execute all such further acts for the carrying out of this Agreement as Lender may from time to time reasonably request. Borrower shall furnish to Lender all necessary building and other permits in form acceptable to Lender before any construction draws after initial advance shall be distributed.

      2.09   <u>Payment of Costs</u>. Borrower shall pay all costs and expenses incurred in connection with the construction of the Premises, including engineering and architectural fees (including testing), taxes, license and permit fees, and other insurance premiums, whether or not funds therefore are disbursed hereunder. Borrower shall pay all costs and expenses incurred in connection with inspection fees (including fees of Construction Consultant), legal fees, surveying and recording costs.

      2.10   <u>Insufficiency of Loan Proceeds</u>. If at any time or from time to time during the term of this Agreement, the remaining undisbursed portion of the Loan, together with the undisbursed balance of any sums previously deposited by Borrower with Lender pursuant to this provision, is insufficient in the judgment of Lender to fully complete the Improvements in accordance with the provisions of this Agreement, maintaining a contingency reserve in an amount which is appropriate in light of the progress of construction, to pay all interest or other sums due or to become due under the Loan Documents prior to the maturity of the Loan, to pay all sums required for compliance with the Key Documents and to pay any

amounts alleged to be due and payable at the time for services or materials in connection with the Improvements, and to pay all other costs necessary to the foregoing, Borrower shall, within thirty (30) days after written notice thereof from Lender, deposit with Lender such sums of money as are, in the judgment of Lender, sufficient to remedy such condition. All such deposited sums shall stand as additional security for Borrower's obligations under this Agreement and may be disbursed, at Lender's option, before or after further advances of the Loan are made, with any remaining deposited sums to be paid over to Borrower if and when Lender determines in its judgment that such deposited sums will not be required for payment of the costs and expenses referred to above in this provision.

      2.11    <u>Affirmative Covenants.</u> Borrower covenants and agrees that, so long as it may draw down under the Note or so long as any indebtedness remains outstanding under the Note, Borrower shall:

      (a)    Maintain its books, accounts and records in accordance with generally accepted accounting principles and shall permit any person or entity designated in writing by Lender to visit and inspect any of its properties, books and financial records, and to make copies thereof and take extracts therefrom.

      (b)    Pay and discharge all taxes, assessments, fees, withholdings and other governmental charges or levies imposed upon it or upon its income, or upon any property belonging to it, prior to the date on which penalties attached thereto, unless the legality thereof shall be promptly and actively contested in good faith by appropriate proceedings.

      (c)    Maintain its existence in good standing in its state of incorporation and its qualifications and good standing in all jurisdictions where such qualification is required under applicable law, and conduct its business in the manner in which it is now conducted subject to only to changes made in the ordinary course of business.

      (d)    Promptly notify Lender in writing of the occurrence of any Default or of any pending or threatened litigation claiming damages in any amount seeking relief that, if granted, would adversely affect the financial condition or business operations of Borrower.

      (e)    Maintain and keep in force insurance of the types and in amounts customarily carried in lines of business similar to Borrower's, including, without limitation, fire, public liability, property damage, worker's compensation insurance, hazard insurance on subject property, flood insurance if the property is located in a flood zone as indicated by a flood search, and builder's risk insurance, which insurance shall be carried with companies and in amounts reasonably satisfactory to Lender, and Borrower shall deliver to Lender from time to time at Lender's request schedules setting forth all insurance then in effect and if applicable, certificates showing Lender as loss payee or an additional insured thereunder.

      (f)    Keep all its property in good repair and condition, and from time to time make necessary repairs, renewals and replacements thereto so that Borrower's property shall be fully and efficiently preserved and maintained.

      2.12    <u>Negative Covenants.</u> Borrower covenants and agrees that, without the prior written consent of Lender, so long as it may borrow under the Note or so long as any indebtedness remains outstanding under the Note, Borrower shall not:

      (a)    Use any proceeds of the advances under the Note except for the purposes stated herein.

(b)     Make any additional investment in fixed assets in any one fiscal year in excess of a yearly aggregate of $25,000.00.

(c)     Create, incur, assume, or suffer to exist any indebtedness in excess of $25,000.00 during any single fiscal year (including lease obligations) as of the date of the Note.

(d)     Merge, consolidate or enter into a partnership or joint venture with any other person or entity.

(e)     Guarantee or become contingently liable for any obligation or indebtedness of any other person or entity.

(f)     Make any loans, advances or extensions of credit to any person or entity.

(g)     Grant any lien on or in, or otherwise encumber, or permit a lien to exist on, any of its properties or assets including, without limitation, the Premises, except as provided in Section 2.14 and except for (i) liens in favor of Lender, (ii) taxes not yet due and payable or which are being actively contested in good faith by appropriate proceedings; and (iii) those liens previously disclosed to Lender by Borrower in writing; and shall not enter into any agreement that would grant a negative pledge to any other entity, except as provided in Section 2.14.

2.13    _Financial Covenants and Reporting Requirements_.  All building pledge collections received by Borrower shall be applied toward the principal Indebtedness.  Borrower shall provide to Lender quarterly operating financial statements with budgets and quarterly capital account/campaign financial statements within thirty (30) days after the end of each quarter.  Annual Borrower-prepared financial statements are to be furnished to Lender by Borrower within one hundred twenty (120) days after the end of Borrower's fiscal year.

2.14    _Negative Pledge_.  Borrower shall not create, assume or suffer to exist any Lien or give any negative pledge on any asset now owned or hereafter acquired by it, except:

(a)     The Security Instrument and the other Loan Documents executed in connection with the Loan; and

(b)     Liens incidental to the conduct of its business or the ownership of its assets which do not in the aggregate materially detract from the value of its assets or materially impair the use thereof in the operation of its business.

"Lien" means, with respect to any asset, any mortgage, lien, pledge (including, without limitation, a negative pledge), charge, security interest, security title, preferential arrangement which has the practical effect of constituting a security interest or encumbrance, servitude or encumbrance of any kind in respect of such asset to secure or assure payment of a debt or a guarantee, whether by consensual agreement or by operation of statute or other law, or by any agreement, contingent or otherwise, to provide any of the foregoing. For the purposes of this Agreement, Borrower shall be deemed to own subject to a Lien any asset which it has acquired or holds subject to the interest of a vendor or lessor under any conditional sale agreement, capital lease or other title retention agreement relating to such asset.

### ARTICLE III
### DISBURSEMENT OF LOAN PROCEEDS

3.01    <u>Conditions Precedent to Lender's Obligations</u>.  Lender shall in no manner be obligated to disburse any proceeds of the Loan unless and until all conditions and requirements of the Loan Commitment, this document and any letter of instructions issued by or on behalf of Lender have been satisfied and met.

3.02    <u>Initial Advance</u>.  At closing, Lender shall make to Borrower an initial advance in an amount equal to the sum of the payoff of any Existing Financing and closing costs.  All subsequent advances shall be for construction of Improvements, and said advances shall only be made upon the terms and conditions set forth herein below.

3.03    <u>Subsequent Advances</u>.  Any obligation of Lender to make any advance after the first advance shall be subject to the following conditions:

(a)    Prior Conditions Satisfied.  All conditions precedent to the first advance shall have been satisfied as of the date of such subsequent advance.

(b)    No Default.  There shall be no default or Default under this Agreement, the Loan Documents or the Key Documents.

(c)    No Damage or Taking.  The Improvements shall not be damaged by fire or other casualty and neither the Improvements nor the Property shall be affected by any condemnation proceeding.

(d)    Receipt by Lender.  Lender shall have received:

(i)    Copy of executed construction contract concerning construction of Improvements, copy of Plans and Specifications concerning construction of Improvements, copy of construction budget concerning construction of Improvements and proof of builder's risk insurance; and

(ii)    A Draw Request complying with the requirements hereof; and

(iii)    Lien waivers bearing a then current date and prepared on forms provided by Lender and/or title company from Contractor and such subcontractors or materialmen as Lender and/or title company may designate; and

(iv)    If requested, a certificate from Construction Consultant stating that the construction of the Improvements theretofore performed is in accordance with the Plans and Specifications and that the remaining non-disbursed portion of the Loan allocated for such purpose is adequate to complete the construction of the Improvements; and

(v)    Copy of the appropriate building permits for the Improvements.

(e)    Lender's Approval.  Lender shall have approved the form and substance of the materials and documents furnished to it pursuant to Section 3.03(d)(i) hereinabove.

3.04    <u>Final Advance</u>.  In addition to the foregoing, Lender's obligation to advance the retainage withheld pursuant to Subsection 3.05(a)(iv), below, shall be subject to the following conditions:

(a)    Completion, Approval and Inspection of Improvements.  The Improvements shall have been fully completed in accordance with the Plans and Specifications, and Lender shall receive (i) evidence of the approval by all appropriate governmental authorities of the permanent occupancy and contemplated uses of the Improvements, to the extent any such approval is or will be a condition of such lawful use and occupancy; and (ii) if required by Lender, notification from Construction Consultant and Borrower's architect that the Improvements have been completed in accordance with the Plans and Specifications; and

(b)    Payments of Costs.  Evidence satisfactory to Lender that all sums due in connection with the construction of the Improvements have been paid in full (or will be paid out of the funds requested to be advanced) and that no party claims or has a right to claim any supplying of labor, material, and/or services in connection therewith.

3.05    Method of Disbursement of Loan Proceeds.  Lender agrees to make disbursements to Borrower against the Note up to the face amount thereof in accordance with and subject to the following procedures:

(a)    Draw Request to be Submitted to Lender.

(i)    At such time as Borrower shall desire to obtain, subject to the other requirements hereof, a disbursement of any portion of the proceeds of the Loan, Borrower shall complete, execute and deliver to Lender a request for an advance on Lender's standard form certificate for payment, a copy of which is attached hereto as Exhibit "C", signed by Borrower, together with all supporting schedules contemplated thereby. Borrower's first draw request (to be funded at closing) shall include requests for payment or reimbursement of all outstanding costs incurred in connection with the Premises and construction of the Improvements through the date identified in the draw request.

(ii)    All Draw Requests shall include a breakdown of: (A) total costs, (B) all amounts previously disbursed, (C) the balance remaining, (D) the requested disbursement, and (E) the balance to remain after the requested disbursement.

(iii)    All Draw Requests which include amounts to be paid to Contractors shall include requisitions from Contractors for such amounts, together with invoices relating to items covered by such requisitions when requested by Lender; and all such requisitions shall provide a breakdown by trade and/or other categories acceptable to Lender of: (A) the total contract sum, (B) the total of all amounts previously disbursed, (C) the balance remaining, (D) the requested disbursement, and (E) the balance to remain after the requested disbursement, and shall contain a certificate by Contractors of the accuracy of the same in form satisfactory to Lender.  All Draw Requests which include items other than payments for work performed under the Construction Contracts shall include a statement of the purpose for which the advance is desired, together with invoices for the same when requested by Lender.

(iv)    In no event shall any advance allocable to a payment on account of construction work or materials to be incorporated into the Improvements or on account of any contractor fees or similar charges directly related to construction (all such payments as distinguished from payments on account of other costs and expenses such as financing charges, attorneys' fees, or architects' fees, being herein referred to as "Construction Costs") exceed an amount equal to: (A) ninety-five percent (95%) of the total cost of Improvements theretofore completed, less (B) the sum of all disbursements of Loan proceeds and equity payments theretofore made against Construction Costs; provided, however, that an advance in excess thereof may, at the option of Lender, be made hereunder for the purpose of making final payment of any balance due any subcontractor after full and final completion of the work on the Improvements being done by such subcontractor, as certified by Construction Consultant, and delivery to

Lender of such evidence as may be required by Lender's counsel to assure Lender that no party claims or has a right to claim any statutory or common law lien arising out of such subcontractor's work or the supplying of labor, material, and/or services in connection therewith. Upon satisfaction of all conditions to the final advance, as set forth in Section 3.04 hereinabove, said percentage in clause (A) of this subsection shall change to one-hundred percent (100%).

    (v)    No advance shall be made for the purchase of materials not yet physically incorporated into the Improvements unless such materials are of types and in quantities specifically approved by Lender and insured and stored on the Premises in a manner satisfactory to Lender and Construction Consultant.

    (vi)    In the event that savings in any line item of the Construction Contract is actually realized, and Lender receives evidence of such savings satisfactory to Lender, then such savings may be applied to (A) any line item of Construction Costs, or (B) to other line items, but only as approved by Lender in its discretion, and in no event to development fees, overhead or other similar costs payable to Borrower or to a person or entity related to or associated with Borrower.

    (b)    Notice, Frequency and Place of Disbursements.  Unless Lender shall, at its option, determine otherwise, (i) each Draw Request shall be submitted to Lender at least five (5) business days prior to the date of the requested advance, (ii) disbursements shall be made no more frequently than monthly, and (iii) all disbursements shall be made at the principal office of Lender or at such other place as Lender may designate.

    (c)    Deposit of Funds Advanced.  Unless otherwise determined by Lender in Lender's discretion, disbursements will be made by depositing proceeds of the Loan in a separate and exclusive account of Borrower at the main office of Lender, and all such proceeds shall be withdrawn and used solely for the purposes specified in the Draw Request, and Borrower shall upon Lender's request promptly furnish Lender with evidence of such use.

    (d)    Advances Do Not Constitute a Waiver.  No advance of any proceeds of the Loan shall constitute a waiver of any Default or any of the conditions of Lender's obligation to make further advances, nor, in the event Borrower fails to satisfy any such condition, shall any such advance have the effect of precluding Lender from thereafter declaring such failure to be a Default under Article III hereof.

**ARTICLE IV**
**DEFAULT**

4.01    A Default shall at the Lender's option be deemed to have occurred hereunder if:

    (a)    Default Under Documents.  Borrower shall breach or fail to perform, observe and satisfy all terms, covenants, conditions and agreements contained in this Agreement or in any of the other Loan Documents or the Key Documents; or any warranty or representation made herein or in any of the other Loan Documents shall be untrue or misleading in any material respect; or

    (b)    Abandonment or Cessation of Construction.  Construction of the Improvements shall cease and not be resumed within thirty (30) days thereafter, or shall be abandoned, subject to delays for force majure; or

(c)    Failure to Complete Improvements.  The Improvements, in the judgment of Lender, are not, or cannot reasonably be, completed on or before the Completion Date in the manner required under this Agreement; or

(d)    Construction Contract.  Without the prior written consent of Lender, (i) the Construction Contract shall be modified or any obligations of Contractor thereunder shall be waived; (ii) a default shall occur under the Construction Contract; (iii) any condition shall occur which would allow Contractor to terminate the Construction Contract; (iv) the Construction Contract shall become unenforceable or be cancelled or terminated; (v) A Contractor shall file a voluntary proceeding under or otherwise take advantage of, or shall remain for more than sixty (60) days the debtor in any involuntary proceeding under, any bankruptcy law or other debtor relief or similar law or make a general assignment for the benefit of creditors.

## ARTICLE V
## REMEDIES OF LENDER

Upon the occurrence of any one or more of the Defaults set out in Article IV hereof, Lender, at its option and in addition to and not in lieu of the remedies provided for in the other Loan Documents, shall be entitled to exercise any one or more of the following remedies:

5.01    Default Constitutes Default Under Other Loan Documents.  Borrower agrees that the occurrence of a Default hereunder shall at the option of the Lender constitute a default and/or Event of Default under each of the other Loan Documents, thereby entitling Lender (a) to exercise any of the various remedies therein provided, and (b) cumulatively to exercise all other rights, options and privileges provided hereunder or by law or in equity.

5.02    Right of Lender to Assume Possession and Complete Construction.  Borrower agrees, upon the request of Lender, to permit Lender: to enter into possession; to perform or cause to be performed any and all work and labor necessary to complete the Improvements in accordance with the Plans and Specifications, with such modifications thereto as shall, in the judgment of Lender, be necessary or desirable; to employ security watchmen to protect the Premises; and to disburse that portion of the Loan proceeds not previously disbursed to the extent necessary to complete such construction of the Improvements, and if such completion requires a larger sum than the remaining undisbursed portion of the Loan, to disburse such additional funds, all of which funds so disbursed by Lender shall be deemed to have been disbursed to Borrower and shall be secured by the Security Instrument.  For this purpose, Borrower hereby constitutes and appoints Lender its true and lawful attorney-in-fact with full power of substitution to complete the construction of the Improvements in the name of Borrower, and hereby empowers Lender, as said attorney, to take all actions which are, in the judgment of Lender, necessary in connection therewith including the following: to use any funds of Borrower which may remain unadvanced hereunder for the purpose of completing the Improvements in the manner called for by the Plans and Specifications; to make such additions, changes and corrections in the Plans and Specifications as shall, in the judgment of Lender, be necessary or desirable; to employ such contractors, subcontractors, agents, architects and inspectors as shall be required for said purposes; to pay, settle or compromise all existing or future bills and claims which are or may be liens against the Premises, or may be necessary or desirable for the completion of the Improvements or the clearance of title to the Premises; to execute all applications and certificates in the name of Borrower which may be required by any applicable law, ordinance, rule or regulation or governmental authority or construction contract; and to do any and every other act with respect to the construction of the Improvements and the operation of the Premises which Borrower may do in its own behalf. It is understood and agreed that this power of attorney shall be deemed to be a power coupled with an interest which cannot be revoked by death or otherwise. As said

attorney-in-fact, Lender shall also have the power (but not the duty) to prosecute and defend all actions or proceedings in connection with the construction of the Improvements and to take such action and require such performance as it deems necessary. Without limiting any other rights or interest granted to Lender hereunder or under any other Loan Document, Borrower hereby assigns and transfers to Lender all sums to be advanced hereunder and any sums held by Lender as security or in escrow, to be used for the completion of the Improvements or the performance of Borrower's other obligations under the Loan Documents.

## ARTICLE VI
## GENERAL CONDITIONS

6.01    <u>Miscellaneous</u>.  Without implying any right of Borrower to transfer title to the Premises or to assign the Loan, in the event of any such transfer or assignment, Lender shall be entitled to make advances to any such transferee or assignee and such advances shall be evidenced by the Note, and Borrower shall remain liable for payment of all sums advanced hereunder before or after such assignment.

6.02    <u>Sums Held By Lender</u>.  Lender shall not, except as otherwise provided by the Loan Documents or required by law, have any obligation to pay interest on any sums from time to time deposited by Borrower with Lender pursuant to this Agreement.

6.03    <u>Periodic Billing</u>.  Bills relating to payments due under the Loan Documents may be sent by Lender from time to time. It is hereby acknowledged and agreed that any such bills are provided for convenience only and do not in any way modify, amend or supersede any provision of the Note or any other Loan Document, that such bills are frequently based upon estimates and are always subject to adjustment either before or after payment is made, and that Borrower is required to make payments as provided in the Note or in other Loan Documents whether or not bills are sent or received.

6.04    <u>Applicable Law</u>.  This Agreement shall be interpreted, construed and enforced according to the laws of the state in which the Property is located.

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement under seal on the date first above written.

**LENDER:**

FOUNDATION CAPITAL RESOURCES, INC.

By: _____    VP

Joshua L. Bartlotti, Vice President

**BORROWER:**

MIGHTY FORTRESS INTERNATIONAL MINISTRIES, INC.

By: _____

Thomas R. Williams, President

ATTEST:

_____

Brenda J. Colston, Secretary

**EXHIBIT A**
**TERMS AND DEFINITIONS**

Borrower's Affidavit.  The affidavit given in connection with the closing of the Loan by Borrower, or an officer of Borrower, regarding title to the Property and certain other matters relating to the Loan.

Completion Date.  Eighteen (18) months from commencement date, and in no event later than January 15, 2009.

Construction Contract.  The contract for the construction of the improvements, executed by and between Borrower and Miller Architect & Builders.

Construction Consultant.  Any other person or persons designated by Lender from time to time.

Contractor.  Miller Architect & Builders, together with all other contractors or subcontractors who provide goods or services toward construction of Improvements.

Default.  As defined in Article IV hereof.

Draw Request.  The certificate for payment described in Subsection 3.05(a)(i) hereof, together with all required supporting documentation.

Existing Financing.  Loan evidenced by Mortgage in favor of Foundation Capital Resources, Inc., in the amount of $6,400,000.00 and recorded in Book _____ at Page _____.

Improvements.  As set forth in Plans & Specifications.

Indebtedness.  As set forth in the Note.

Key Documents.  The Construction Contract, any restrictive covenants and any easements affecting the Premises.

Loan.  The construction/term loan which is the subject of this Agreement in the principal amount of $6,400,000.00.

Loan Commitment.  The loan commitment, dated June 12, 2007, by and between Borrower and Lender.

Loan Documents.  Collectively, this Agreement, the Loan Commitment, the Note, Mortgage, Borrower's Affidavit and all other documents and instruments to or of which Lender is a party or beneficiary now or hereafter evidencing, securing or otherwise relating to the Loan (including any agreement regarding environmental activity).

Note.  The Adjustable Rate Secured Note from Borrower to Lender dated as of even date, in the principal face amount of $6,400,000.00.

Plans and Specifications.  The plans and specifications for the Improvements more particularly identified on Exhibit "B" hereto.

Premises.   The Property and any existing improvements thereon and the Improvements to be constructed thereon.

Property.   The real property described on Exhibit "D".

Security Instrument.   That certain Mortgage, Assignment of Leases and Rents and Security Agreement securing the indebtedness.

**EXHIBIT "B"**
**DESCRIPTION OF PLANS AND SPECIFICATIONS**

To be submitted to Lender prior to subsequent advances.

**EXHIBIT "C"**
**CERTIFICATE FOR PAYMENT**

DATE: _____

FOR PERIOD ENDING: _____

TO:    FOUNDATION CAPITAL RESOURCES, INC., a Georgia corporation **("LENDER")**

FROM:  MIGHTY FORTRESS INTERNATIONAL MINISTRIES, INC., a Minnesota nonprofit
corporation **("BORROWER")**

RE:    6500 85th Avenue North, Brooklyn Park, Minnesota **("PROJECT")**

In accordance with the construction loan agreement (the **"Agreement"**) between Borrower and Lender, Borrower does hereby request that the sum of $_____ be advanced and credited to the account of Borrower, Account No. _____. The amount requested above is determined as follows:

1.    Current payment due contractor
     (See AIA Document G 702 attached hereto):    $_____

2.    Current payments due for non-construction
     development costs:    $_____

3.    Total amount requested:    $_____

The undersigned Borrower does hereby certify, as of the date hereof: That all items for which previous certificates were issued and advances received have been paid; that all sums included in this advance will be, and all sums previously advanced under the Agreement have been, used exclusively for items set forth in the Construction Contracts, including only payment for labor and materials incorporated into the construction of the Project and other approved expenses of the Project; and that the warranties and representations of Borrower in the "Loan Documents" (as defined in the Agreement) are hereby restated, ratified and confirmed; and that there is no default under the Loan Documents; and that there are no offsets, counterclaims or defenses against the indebtedness which is the subject of the Loan Documents; and that there are no liens of record against the Project or any portion thereof arising out of the supplying of labor, material and/or services in connection with the construction thereof; and that no party other than Borrower and Lender owns or claims, or has a right to claim, any interest in or lien or encumbrance on, the Project, except for ad valorem taxes not due and payable and rights to liens to be dissolved upon payment of the advance hereby requested.

BORROWER:

By: _____

Type or print name: _____

Title: _____

# EXHIBIT "X"

## LEGAL DESCRIPTION

Lot 1, Block 1, Mighty Fortress Church, according to the recorded plat hereof, and situate in Hennepin County, Minnesota.

# EXHIBIT B



Doc No 9003758 07/06/2007 01:11 PM
Certified filed and or recorded on above date:
Office of the County Recorder
Hennepin County, Minnesota
Michael H. Cunniff, County Recorder
TransID 325582

Deputy 18
Fees
$35.50 DOC
$10.50 SUR
$5.00 CF
$51.00 Total

RECORDING REQUESTED BY AND
UPON RECORDATION RETURN TO:

Foundation Capital Resources, Inc.
1661 North Boonville Avenue
Springfield, MO 65803

Henn Co     MRT
CTR      # 28480
7/6/2007
Paid     $15,360.00

# MORTGAGE, ASSIGNMENT OF LEASES AND RENTS
# AND SECURITY AGREEMENT

GRANTOR/BORROWER:              MIGHTY FORTRESS INTERNATIONAL MINISTRIES,
                                                  INC., a Minnesota nonprofit corporation

GRANTEE/BENEFICIARY:          FOUNDATION CAPITAL RESOURCES, INC., a Georgia
                                                  corporation

THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY
AGREEMENT ("Security Instrument"), effective July 6, 2007, by MIGHTY FORTRESS
INTERNATIONAL MINISTRIES, INC., a Minnesota nonprofit corporation, ("Borrower"), whose
address is 6500 85th Avenue North, Brooklyn Park, Minnesota 55334, in favor of FOUNDATION
CAPITAL RESOURCES, INC., a Georgia corporation ("Lender"), whose address is 1661 North
Boonville Avenue, Springfield, Missouri 65803.

## GRANTING CLAUSE

Lender is making a loan to Borrower in the total amount of SIX MILLION FOUR HUNDRED
THOUSAND AND 00/100 DOLLARS ($6,400,000.00) (the "Loan"). In consideration of the Loan,
Borrower hereby grants, conveys, transfers and assigns to Lender, its successors and assigns, with power
of sale and right of entry and possession as provided below, all of its present and future estate, right, title
and interest in and to the property now or hereafter acquired as described on Exhibit "A" attached hereto
and incorporated herein (the "Property") and all minerals, oil, gas and other hydrocarbon substances on
or under the surface of the Property, as well as all development rights, permits, licenses, air rights, water,
water rights, and water stock relating to the Property.

All present and future structures, buildings, improvements, appurtenances and fixtures of any
kind on the Property, all apparatus, equipment and appliances used in connection with the operation or
occupancy of the Property, such as heating and air-conditioning systems and facilities used to provide

any utility services, refrigeration, ventilation, laundry, drying, dishwashing, garbage disposal, recreation or other services on the Property, and all window coverings, drapes and rods, carpeting and floor coverings, it being intended and agreed that all such items will be conclusively considered to be part of the Property conveyed by this Security Instrument, whether or not attached or affixed to the Property (**"Improvements"**).

All appurtenances of the Property and all rights of Borrower in and to any streets, roads or public places, easements or rights of way, relating to the Property.

All of the rents, royalties, profits and income of the Property (**"Rents"**), and all rights of Borrower under all present and future leases affecting the Property, including but not limited to any security deposits.

All proceeds and claims arising on account of any damage to or taking of the Property or any Improvements thereon or any part thereof, and all causes of action and recoveries for any loss or diminution in the value of the Property or any Improvements.

**TO HAVE AND TO HOLD** said property, Improvements, appurtenances, Easements, right, royalties, mineral, oil and gas rights and profits, water rights stock, permits, licenses, rents and profits.

Provided, however, these presents are upon the express condition that, if Borrower shall well and truly pay the Lender the secured indebtedness at the time and in the manner provided in the Note (hereinafter defined), this Security Instrument and the Loan Documents shall well and truly perform the other obligations as set forth therein and shall well and truly abide by and comply with each and every covenant set forth herein, these presents and the estate hereby granted shall cease, terminate and be void; provided however, that Borrower's obligation to indemnify and hold harmless Lender pursuant to the provisions hereof with respect to matters relating to any period of time during which this security instrument was in effect shall survive any such payment or release.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, convey and assign the Property, that the Property is unencumbered, and that Borrower will warrant and defend generally the title to the property against all claims and demands, subject to any easements and restrictions listed in the schedule of exceptions to coverage in a title insurance policy insuring Lender's interest in the Property; which exceptions, if any, have been approved by Lender.

## SECURED OBLIGATIONS

This Security Instrument secures the following obligations (**"Obligations"**):

**A.**     **LOAN.**  Payment and performance of Borrower's indebtedness and obligations under that certain Adjustable Rate Secured Note of even date herewith in the amount of SIX MILLION FOUR HUNDRED THOUSAND AND 00/100 DOLLARS ($6,400,000.00) which provides for an adjustable rate of interest (the **"Note"**), including all extensions, renewals and modifications of the Note, and any additional note or notes.

The payment of the principal and interest on all other future loans or advances made by Lender to Borrower (or any successor in interest to Borrower as the owner of all or any part of the Property) when the note evidencing such loan or advance specifically states that it is secured by this

Security Instrument (**"Future Advances"**), including all extensions, renewals and modifications of any Future Advances.

    **B.**    **OTHER OBLIGATIONS.**  The payment and performance of Borrower's obligations under this Security Instrument.  The payment of all sums advanced or paid out by Lender under or pursuant to any provision of this Security Instrument or to protect the security of this Security Instrument, together with interest thereon as provided herein.

    **C.**    **MATURITY,**  The Note secured hereby matures on January 15, 2029.

**ARTICLE 1**
**COVENANTS OF BORROWER**

    To protect the security of this Security Instrument, Borrower agrees:

    **1.1.**    **Performance.**  Borrower agrees to pay all indebtedness and perform all obligations that are secured by this Security Instrument in accordance with their terms.

    **1.2.**    **Insurance.**  Borrower shall maintain or cause to be maintained in force, until full payment of the Loans, policies of insurance satisfactory to Lender as follows: (a) fire and extended coverage insurance, including loss or damage by vandalism, malicious mischief, and such other insurable hazards as Lender shall reasonably require.  The amount of such insurance shall be satisfactory to Lender and shall be equal to the greater of the amount of the Loans or 100% of the full replacement cost of the improvements, based on the insurer's agreed value under a full replacement cost endorsement without co-insurance.  "Full replacement cost," as used herein, means the cost of replacing the improvements, exclusive of the cost of excavation, foundations, and footings; (b) all furniture, fixtures, and equipment necessary for the operation of the Improvements shall be insured against loss by burglary, theft, or mysterious disappearance; (c) flood insurance, in the event the improvements are located within a 100-year flood plain and such insurance is available pursuant to the provisions of the Flood Disaster Protection Act of 1973 or other applicable legislation; (d) comprehensive general liability insurance, including explosion and collapse coverage, covering personal injury and property damage with adequate coverage; (e) while any persons are employed by Borrower, workers' compensation and employer's liability insurance and other insurance required by law; and (f) to the extent available, business interruption insurance of twelve (12) month terms.  Each policy of insurance shall be issued by a company approved by Lender and qualified to do business in the state where the Property is located.  All premiums on insurance policies shall be paid, by Borrower making payment, when due, directly to the carrier, or in such other manner as Lender may designate in writing.

    All insurance policies and renewals thereof shall be in a form acceptable to Lender. Lender shall have the right to hold the policies, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums.  At least thirty (30) days prior to the expiration date of a policy, Borrower shall deliver to Lender a renewal policy in form satisfactory to Lender.

    **1.3.**    **Assignment of Proceeds.**  All insurance proceeds on the Property, all proceeds of a sale of all or any portion of the Property, and all causes of action, claims, compensation, awards and recoveries for any damage, condemnation or taking of all or any part of the Property or for any damage or injury to it or for any loss or diminution in value of the Property, are hereby assigned to and shall be paid to Lender.  At Lender's option, Lender may appear in and prosecute (either in its own name or in the name of Borrower) or participate in any suits or proceedings relating to any such proceeds, causes of actions, claims, compensation, awards or recoveries and may adjust, compromise or settle any claim in

connection therewith. Lender shall apply any sums received by it under this Section 1.3 first to the payment of all of its reasonable costs and expenses (including but not limited to legal fees and disbursements) incurred in obtaining those sums, and then, in its absolute discretion and without regard to the adequacy of its security, to the payment of the indebtedness and obligations secured by this Security Instrument, except as provided in Section 1.10 below. Any application of such funds to the indebtedness secured hereby shall not be construed to cure or waive any Event of Default or invalidate any acts of Lender arising out of such Event of Default.

     **1.4.**   <u>**Taxes and Assessments.**</u>  Borrower agrees to pay when due all taxes, fees, impositions, and assessments which are or may become a lien on all or any portion of or interest in the Property or which are assessed against the Property or its rents, royalties, profits and income. Borrower also agrees to pay when due all lawful claims and demands of mechanics, materialmen, laborers and others for any work performed or materials delivered with respect to the Property. In the event of the passage after the date of this Security Instrument of any law of the state where the Property is located, deducting from the value of land, for the purpose of taxation, any lien thereon, or changing in any way the laws now in force for the taxation of mortgages or debts secured by mortgages for state or local purposes or the manner of the collection of such taxes so as to affect this Security Instrument, the entire principal balance under said Note, together with all accrued interest thereon, at the option of Lender, without demand or notice, forthwith shall become due and payable; provided, however, that such option shall be ineffective if Borrower is permitted by law to pay the whole of such tax, in addition to all other payments required hereunder, and, if prior to such specified date. Borrower does pay such tax and agrees to pay any such tax when hereafter levied or assessed against the Property, and such agreement shall constitute a modification of this Security Instrument.

     **1.5.**   <u>**Perfection of Security.**</u>  Borrower agrees to execute and deliver to Lender, from time to time on demand and at Borrower's cost and expense, any documents required to perfect and continue the perfection of Lender's interest in the Property.

     **1.6.**   <u>**Rents and Income.**</u>

     **1.6.1.**  All of the existing and future rents, issues, royalties, income, revenue, profits and other benefits of the Property (collectively "**Rents**") that arise from its use or occupancy are hereby absolutely and presently assigned to Lender. However, until an Event of Default, Borrower will have a license to collect and receive the Rents. At any time following an Event of Default, Lender may terminate Borrower's license in its discretion at any time without notice to Borrower and may thereafter collect the Rents itself or by an agent or receiver. Neither the foregoing assignment nor the exercise by Lender of any of its rights or remedies under this Security Instrument shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment, or operation of all or any portion thereof, unless and until Lender, in person or by agent, assumes actual possession thereof. Possession by a court-appointed receiver will not be considered possession by Lender. All Rents collected by Lender or a receiver will be applied first to pay all expenses of collection, and then to the payment of all costs of operation and management of the Property, and then to the payment of the indebtedness and obligations secured by this Security Instrument. Neither Lender nor a receiver shall have an obligation to pay the costs of operation and management of the Property unless the Rents actually collected by Lender or the receiver are sufficient to pay such costs.

**1.6.2.** Borrower shall obtain Lender's prior written consent to the terms and tenants of any occupancy agreements and leases of all or any portion of the Property with terms in excess of twelve (12) months, prior to Borrower's execution of any such lease or occupancy agreement. In addition, Borrower shall obtain Lender's prior written consent to any standard form, and to any material deviation from such form, prior to the execution of any lease or occupancy agreement by Borrower.

**1.6.3** Without the prior written consent of Lender, Borrower shall not accept prepayments of rent exceeding one month under any leases or occupancy agreements affecting any of the Property, nor modify or amend any such leases or occupancy agreements, nor in any manner impair Lender's interest in the Rents of the Property. The foregoing shall not limit Borrower's right to collect "security" to the maximum extent permitted by law. Borrower shall fully and timely perform all covenants of the lessor under any such leases or occupancy agreements. Upon Lender's request, Borrower shall execute and deliver to Lender for recordation an assignment of leases on Lender's form. Borrower represents and warrants that Borrower has good title to the leases and the full right and power to assign the same; and that no other person has any right, title, or interest therein; that Borrower has duly and punctually performed all the terms, covenants, conditions, and warranties of the leases on Borrower's part to be performed; that the leases are valid and unmodified and in full force and effect; that Borrower has not previously sold, assigned, transferred, hypothecated, or pledged the Rents, whether now due or hereafter to become due; that any Rents due and issuing from the Property or any portion thereof for any period after the date hereof have not been collected; and that payment of any of the Rents has not otherwise been anticipated, waived, released, discounted, set-off, or otherwise discharged or compromised; that Borrower has not received any funds or deposits from tenants other than as previously disclosed in a Tenant Estoppel; and that the tenants under the leases are not in default with respect to any of the terms of the leases. If any of the foregoing representations or warranties of Borrower shall be found to be untrue, or Borrower shall default in the observance or performance of any obligation, term, covenant, condition, representation, or warranty contained in this Section 1.6, then, in each such instance, upon Lender's delivery of five (5) days written notice to Borrower of such occurrence, the same shall constitute and be deemed to be a default under the Note, this Security Instrument, and the other documents evidencing or securing the Loan (the "Loan Documents"), entitling Lender to declare all sums secured by this Security Instrument immediately due and payable, and to exercise any and all of the rights and remedies provided under this Security Instrument, the Note, and the other Loan Documents in addition to any other rights or remedies it may have at law or in equity.

**1.6.4** Each lease or occupancy agreement affecting any of the Property must provide, in a manner approved by Lender, that the tenant shall recognize as its lessor any person succeeding to the interest of Borrower upon any foreclosure of this Security Instrument or transfer in lieu of foreclosure. In the alternative, Borrower may obtain a Subordination, Nondisturbance and Attornment from the lessee wherein the lessee agrees to recognize as its lessor any person succeeding to the interest of Borrower upon any foreclosure of this Security Instrument or transfer in lieu of foreclosure.

**1.7.** <u>Acceleration.</u> Without the prior written consent of Lender (which consent may be withheld in Lender's sole and absolute discretion), Borrower shall not sell, encumber, assign, contract to sell, grant an option to sell, lease, or otherwise transfer or convey the Property or any portion thereof or interest therein or suffer its title therein to be divested whether voluntarily, by operation of law or otherwise, and Borrower shall not dissolve, cease doing business or terminate its existence. If such an event occurs without Lender's prior written consent, Lender may, in its sole option and upon written notice to Borrower, accelerate the maturity date of the sums secured hereby and declare all such sums immediately due and payable.

**1.8.** <u>Waste; Changes in Zoning; Subdivision.</u>

**1.8.1.** Borrower (a) shall not commit waste or permit impairment or deterioration of the Property or take any actions that might invalidate any insurance carried on the Property, (b) shall not abandon the Property, (c) shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair, (d) shall keep the Property, including improvements, fixtures, equipment, machinery and appliances thereon in good repair and shall replace fixtures, equipment, machinery and appliances on the Property when necessary to keep such items In good repair, (e) shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property, and (f) shall give notice in writing to Lender of and, unless otherwise directed in writing by Lender, appear in and defend any action or proceeding purporting to affect the Property, the security of this Security Instrument or the rights or powers of Lender. Lender shall have the right, but not the obligation, to enter upon and take possession of the Property and to make additions, alterations, repairs, or improvements to the Property which Lender may consider necessary or proper to keep the Property in good condition and repair. No Improvements may be removed, demolished or materially altered without the prior written consent of Lender, which Lender may withhold in its sole and absolute discretion. No personal property in which Lender has a security interest may be removed from the Property unless it is immediately replaced by similar property of at least equivalent value on which Lender will immediately have a valid first lien and security interest.

**1.8.2.** Without the prior written consent of Lender, which Lender may withhold in its sole and absolute discretion, Borrower shall not seek, make or consent to any change in the zoning or conditions of use of the Property. Borrower, at its sole cost, shall comply with and make all payments required under the provisions of any covenants, conditions or restrictions affecting the Property, including but not limited to those contained in any declaration and constituent documents of any condominium, cooperative or planned development project on the Property. Borrower, at its sole cost, shall comply with all existing and future requirements of all governmental authorities having jurisdiction over the Property.

**1.8.3.** If this Security Instrument covers a subdivision or common interest development (**"Subdivision"**), as defined under any law of the state where the Property is located which relates to the development or sale of a "common interest development" or a "subdivision," Borrower shall obtain, comply with and keep in effect all present and future permits, maps, bonds and other agreements required by applicable laws and regulations for the lawful construction or sale of the Subdivision lots and/or units. Borrower must also maintain an active sales program for the Subdivision, and always be in a position to convey insurable title to the lots and/or units to purchasers.

**1.9.**   **Books and Records.**

    **1.9.1.**   Borrower shall keep adequate books and records of account of the Property and its own financial affairs on a cash basis sufficient to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles. Lender shall have the right to examine, copy and audit Borrower's records and books of account at all reasonable times. If the Property is at any time used for commercial or residential income purposes, Borrower will deliver to Lender, upon request, certified financial statements and profit-and-loss statements for Borrower and the Property prepared in accordance with generally accepted accounting principles.

    **1.9.2.**   Borrower will promptly furnish from time to time, upon Lender's request, a duly acknowledged written statement setting forth all amounts due on the indebtedness secured by this Security Instrument and stating whether any offsets or defenses exist, and containing such other matters as Lender may reasonably require.

    **1.10.**   **Defend Security.**   Borrower shall, at its own expense, appear in and defend any action or proceeding that might affect Lender's security or the rights or powers of Lender or that purports to affect any of the Property.   If Borrower fails to perform any of its covenants or agreements contained in this Security Instrument or any of the other Loan Documents and such failure continues for fifteen (15) days following receipt of written notice from Lender of such failure, or if any action or proceedings of any kind (including but not limited to any bankruptcy, insolvency, arrangement, reorganization or other debtor relief proceeding) is commenced which might affect Lender's interest in the Property or Lender's right to enforce its security, then Lender may, at it's option, make any appearances, disburse any sums and take any actions as may be necessary or desirable to protect or enforce the security of this Security Instrument or to remedy the failure of Borrower to perform its covenants, including without limitation payment on behalf of Borrower of any taxes, assessments, liens, insurance premiums, and repair or maintenance costs (without, however, waiving any default of Borrower). Borrower agrees to pay all reasonable out-of-pocket expenses of Lender thus incurred (including but not limited to fees and disbursements of counsel). Any sums disbursed or advanced by Lender shall be additional indebtedness of Borrower secured by this Security Instrument and shall be payable by Borrower upon demand.   Any such sums so disbursed or advanced by Lender shall bear interest at the Default Rate as set forth in the Note.   This Section 1.9 shall not be construed to require Lender to incur any expenses, make any appearances, or take any other actions.

    **1.11.**   **Damage and Destruction.**

    **1.11.1.**   If the Property, or any portion thereof, is destroyed (in whole or in part), or is damaged by fire or other casualty, Borrower shall be obligated to continue to pay the Loans. Borrower shall give Lender prompt written notice of any such destruction or damage in excess of Ten Thousand Dollars ($10,000.00).

    **1.11.2.**   Prior to the termination of this Security Instrument, the proceeds from any insurance resulting from any events described in the preceding Section less all expenses related thereto (the **"Net Proceeds"**) shall be deposited in a trust fund to be known as the "Insurance Proceeds Fund". All Net Proceeds shall be applied in one or more of the following ways, as elected by Borrower in a written notice to Lender.

    **1.11.2.1.**   To the prompt repair, restoration, modification or improvement of the Property by Borrower, upon receipt by Lender of written request on applicable forms for each draw request accompanied by supporting invoices, statements, bills and approved construction draw form, signed by an officer or individual authorized to make draw requests on behalf of the Borrower; or

**1.11.2.2.** Toward the purchase of additional property, against which Borrower shall give a first lien to Lender; or

**1.11.2.3.** To the prepayment of the Loan in the same manner as partial prepayments are to be applied under the provisions of the Note, but without any premium or penalty; or

**1.11.2.4.** A combination of these purposes.

Any balance of the Net Proceeds remaining shall be paid to Borrower.

**1.11.3.** If the Net Proceeds are insufficient to pay in full the costs of the repair, restoration, modification or improvement required hereunder, Borrower will nevertheless complete the work so that the Property is in substantially the same condition as existed prior to such damage or destruction, or is in a condition of at least equivalent value and function, and Borrower or will pay any cost in excess of the amount of the Net Proceeds held by Lender. Lender shall not be required to confirm the availability of such excess. When Borrower has complied with all of the preceding portions of this Section 1.11, Lender may condition disbursement of the sums specified in subsection 1.11.3 above To Borrower on terms and conditions such as those governing disbursements of loan funds in construction loans made by Lender for similar properties.

**1.12.    Condemnation.**

**1.12.1.** If title to all, or substantially all, of the Property shall be taken or condemned by competent authority for any public use or purpose, the gross amount awarded, less all attorneys' fees and other expenses and costs in the condemnation proceeding (the "Net Condemnation Award") shall be applied to the prepayment of the Loan in the same manner as partial prepayments are to be applied under the provisions of the Note. Any balance of the Net Condemnation Award shall be paid to Borrower. In the event the Net Condemnation Award shall be insufficient to pay in full the amount necessary to pay all outstanding principal, interest, Lender's fees and other costs applicable to the Loans, Borrower shall pay the amount of any such deficiency.

**1.12.2.** If less than substantially all of the Property shall be taken or condemned by competent authority for any public use or purpose, neither the term nor any of the obligations of Borrower under this Security Instrument shall be affected or reduced in any way.

**1.12.2.1.** If any part of the Property is taken, Borrower shall proceed to repair, replace, restore or rebuild the remaining parts so that the Property is in substantially the same condition as immediately prior to such condemnation or is in a condition of at least equivalent value and function.

**1.12.2.2.** The entire Net Condemnation Award, less expenses, shall be paid to the Borrower for use in repairing, restoring replacing and rebuilding as provided hereinabove. Said Award shall be transferred to the Borrower in the same manner as insurance proceeds are made available. If the Net Condemnation Award is less than the amount necessary for the Borrower to repair, replace, restore and rebuild, as set forth hereinabove, Borrower shall nevertheless complete the repair, replacement, restoration or rebuilding and pay the costs thereof. Lender shall not be required to confirm the availability of such excess.

**1.12.2.3.** If the Net Condemnation Award is in excess of the amount necessary to repair, replace, restore and rebuild, such excess shall be paid to Lender to be applied to (i) the prepayment of the Loan in the same manner as partial prepayments are to be applied under the provisions

of the Note, (ii) purchase of additional property against which Borrower shall give a first lien to Lender, or (iii) to construct additional improvements on the Property remaining under the lien. The Borrower has the right to select which of the above and foregoing alternatives it desires to exercise, and shall notify Lender, in writing, which alternative is selected by Borrower.

       **1.12.3.** Borrower shall be obligated to continue to make all payments required hereunder pending any such condemnation proceeding, and thereafter unless the Loans are paid in full.

       **1.12.4.** Lender is authorized to join in and consent to deeds in lieu of condemnation as requested by Borrower upon receipt of a copy of the written agreement between the condemning authority and the Borrower.

       **1.13.**   <u>Security Agreement and Fixture Filing</u>. This Security Instrument is intended to be and shall constitute a security agreement as defined in the Uniform Commercial Code, the Borrower being the Debtor and the Beneficiary being the Secured Party. Borrower hereby grants Beneficiary a security interest in any items of personal property described in Exhibit "B" attached hereto which are not herein effectively made a part of the real property, for the purpose of securing all indebtedness and other obligations of Borrower now or hereafter secured by this Security Instrument. Borrower agrees to execute and deliver financing and continuation statements covering said property from time to time in such form as Beneficiary may require to perfect and continue the perfection of Beneficiary's security interest with respect to said property, and to reimburse Beneficiary for any costs incurred in filing such financing statements and any continuation statements. Borrower shall not create or allow the creation of any other security interest in said property. Upon the occurrence of any default by Borrower hereunder, Beneficiary shall have the rights and remedies of a secured party under the Uniform Commercial Code, as well as all other rights and remedies available at law or in equity or as provided herein, all at Beneficiary's option. Borrower and Beneficiary agree that the filing of a financing statement in the records normally having to do with personal property shall never be construed as in any way derogating from or impairing this declaration and the hereby stated intention of the parties hereto that everything used in connection with the operation or occupancy of said property or the production of income therefrom is and, at all times and for all purposes and in all proceedings, both legal and equitable, shall be regarded as real property encumbered by this Security Instrument, irrespective of whether (a) any such item is physically attached to the buildings and improvements, (b) serial numbers are used for the better identification of certain equipment, or (c) any such item is referred to or reflected in any such financing statement so filed at any time. Such mention in the financing statement is declared to be for the protection of the Beneficiary in the event any court or judge shall at any time hold that notice of Beneficiary's priority of interest must be filed in the Uniform Commercial Code records to be effective against a particular class of persons, including, but not limited to, the federal government any subdivision or entity of the federal government.

       **1.14.**   <u>Compensation; Exculpation; Indemnification</u>.

       **1.14.1.** Borrower hereby agrees to indemnify Lender against, and holds it harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys fees and other legal expenses, cost of evidence of title, cost of evidence of value, and other expenses which either may suffer or incur (a) by reason of this Security Instrument; or (b) by reason of the execution of this Security Instrument or in performance of any act required or permitted hereunder or by law; or (c) as a result of any failure of Borrower to perform Borrower's obligations; or (d) by reason of any alleged obligation or undertaking on Lender's part to perform or discharge any of the representations, warranties, conditions, covenants or other obligations contained in any other document related to the Property. Notwithstanding the foregoing, Borrower shall not be liable under this subsection 1.14.1 to the extent that Borrower

establishes that such liability is attributable solely and directly to the gross negligence or willful misconduct of Lender.

        **1.14.2.** Borrower shall pay all indebtedness arising under this Section 1.14 immediately upon demand by Lender together with interest thereon from the date the indebtedness arises at the Default Rate of interest set forth in the Note (after giving effect to any notice and/or cure periods). Borrower's duty to indemnify Lender shall survive the release and cancellation of the Obligations and the release and reconveyance or any partial release or reconveyance of this Security Instrument.

## ARTICLE 2
## EVENTS OF DEFAULT

    **List of Events of Default.** An Event of Default shall have occurred under this Security Instrument upon the occurrence of any of the following:

        **2.1.1.** Borrower fails timely to make any payment required by the Note, any future advances, or any of the other Loan Documents; or

        **2.1.2.** Borrower breaches any warranty or fails to perform any other covenant contained in this Security Instrument or any of the other Loan Documents, and does not cure that failure within fifteen (15) days after written notice specifying such default and requesting that it e remedied, given to the Borrower by the Lender; or

        **2.1.3.** If any representation or warranty of Borrower or of its members, general partners, principals, affiliates, agents or employees, or of any Guarantor or Indemnitor, if any, made herein or in the Indemnity or in any other Loan Document, in any guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Lender shall have been false or misleading in any material respect when made;

        **2.1.4.** If Borrower or any Guarantor or any Indemnitor, if any, shall make an assignment for the benefit of creditors or if Borrower or any Guarantor or Indemnitor shall admit in writing its inability to pay, or Borrower's or any Guarantor's or any Indemnitor's failure to pay its debts as they become due;

        **2.1.5.** If (i) Borrower or any subsidiary or general partner or member of Borrower, or any Guarantor or any Indemnitor, if any, shall commence any case, proceeding or other action (A) under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization, conservatorship or relief of debtors, seeking to have an order for relief entered with respect to it, or seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to it or its debts, or (B) seeking appointment of a receiver, trustee, custodian, conservator or other similar official for it or for all or any substantial part of its assets, or Borrower or any subsidiary or general partner or member of Borrower, or any Guarantor or any Indemnitor shall make a general assignment for the benefit of its creditors; or (ii) there shall be commenced against Borrower or any subsidiary or general partner or member of Borrower, or any Guarantor or any Indemnitor any case, proceeding or other action of a nature referred to in clause (i) above which (A) results in the entry of an order for relief or any such adjudication or appointment or (B) remains undismissed, undischarged or unbonded for a period of sixty (60) calendar days; or (iii) there shall be commenced against Borrower or any subsidiary or general partner or member of Borrower or any Guarantor or any Indemnitor any case, proceeding or other action seeking issuance of a warrant of attachment, execution, distraint or similar process against all or any substantial part of its assets which results in the entry of any order for any such relief which shall not

have been vacated, discharged, or stayed or bonded pending appeal within sixty (60) calendar days from the entry thereof; or (iv) Borrower or any subsidiary or general partner or member of Borrower, or any Guarantor or any Indemnitor shall take any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the acts set forth in clause (i), (ii) or (iii) above; or (v) Borrower or any subsidiary or general partner or member of Borrower, or any Guarantor or any Indemnitor shall generally not, or shall be unable to, or shall admit in writing its inability to, pay its debts as they become due;

**2.1.6.** Subject to Borrower's right to contest certain liens as provided in this Security Instrument, if the Property becomes subject to any mechanic's, materialman's or other lien other than a lien for local real estate taxes and assessments not then due and payable and the lien shall remain undischarged of record (by payment, bonding or otherwise) for a period of thirty (30) calendar days; or

**2.1.7.** If any federal tax lien is filed against Borrower, any general partner of Borrower, any Guarantor, any Indemnitor, if any, or the Property and same is not discharged of record within thirty (30) calendar days after same is filed; or

**2.1.8.** Except as permitted in this Security Instrument, the actual or threatened alteration, improvement, demolition or removal of any of the Improvements without the prior consent of Lender; or

**2.1.9.** Damage to the Property in any manner which is not covered by insurance, which lack of coverage arises solely as a result of Borrower's failure to maintain the insurance required under this Security Instrument; or

**2.1.10.** Without Lender's prior consent, (i) Borrower engages a managing agent or manager for the Property, (ii) the managing agent if any for the Property resigns or is removed, (iii) the ownership, management or control of such managing agent is transferred to a person or entity other than the general partner, managing partner or managing member or Principal of the Borrower, or (iv) there is any material change in the property management agreement of the Property; or

**2.1.11.** This Security Instrument shall cease to constitute a first priority lien on the Property (other than in accordance with its terms); or

**2.1.12.** Seizure or forfeiture of the Property, or any portion thereof, or Borrower's interest therein, resulting from criminal wrongdoing or other unlawful action of Borrower, its affiliates, or any tenant in the Property under any federal, state or local law; or

**2.1.13.** If any default occurs under the Indemnity given by Borrower and Indemnitor, if any, to Lender and such default continues after the expiration of applicable notice and grace periods, if any; or

**2.1.14.** If any default occurs under any guaranty or indemnity executed in connection herewith and such default continues after the expiration of applicable grace periods, if any; or

**2.1.15.** Any other default or Event of Default occurs under this Security Instrument, the Note or any of the other Loan Documents, or a default occurs under any other agreement of Borrower relating to the Loan.

## ARTICLE 3
## REMEDIES

**3.1.**    **List of Remedies.**  At any time following an Event of Default, Lender may, at its option, and without notice to or demand upon Borrower:

**3.1.1.**  Declare any or all indebtedness secured by this Security Instrument to be due and payable immediately;

**3.1.2.**  Enter onto the Property, and it shall be lawful for the Lender, by such officer or agents, servants and employees as it may appoint or by court appointed receiver, to take possession of the Property (with the relevant books, papers and accounts of the Borrower), and to hold, operate and manage such Property, and from time to time make all needful repairs, and such alterations additions, advances and improvements as to them shall seem wise; and to receive the rents, income, issues and profits thereof and out of them to pay all proper costs and expenses of so taking, holding and managing such Property, including reasonable compensation to the Lender, its agents, servants and employees and counsel, and any charges of the Lender hereunder, and any taxes and assessments and other charges prior to the lien of these presents which the Lender may deem appropriate to pay.  The remainder of the monies so received by it shall be utilized to pay interest and principal on Loan as provided herein;

**3.1.3.**  Cause Borrower to assemble any Personal Property and deliver it to Lender at a place designated by Lender;

**3.1.4.**  At any time during the existence of an Event of Default, Lender at Lender's option may declare the Loan to be immediately due and payable without further demand, and may foreclose this Security Instrument, judicially or by advertisement in accordance with Minnesota law, the power of sale being hereby specifically granted, and may exercise any other remedies permitted by applicable law or provided in this Security Instrument or in any other Loan Document.  Borrower acknowledges that the power of sale granted in this Security Instrument may be exercised by Lender without prior judicial hearing.  Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing such remedies, including attorneys' fees, costs of documentary evidence, abstracts and title reports.;

**3.1.5.**  Exercise any other right or remedy available under any of the Loan Documents, or otherwise available under law or in equity, including without limitation, rights and remedies with respect to the Personal Property that are available to a Secured Party under the Uniform Commercial Code.

**3.2.**    **Appointment of a Receiver.**  Upon the filing of a bill in equity, or other commencement of judicial proceedings to enforce the rights of the Lender, the Lender, as a matter of right, and without regard to the sufficiency of the security shall be entitled, if Lender in its sole discretion so desires, to the appointment (immediately and without notice to the Borrower, which is hereby waived) of a receiver of the Property, and of the income, rents, issues and profits thereof, pending such proceedings, with such powers as may be required to protect the interest of the Lender as the court making such appointment shall confer.

**3.3.**    **Interest Upon Redemption.**  In the event the Property is redeemed in accordance with applicable law, Lender shall be entitled to collect from the redeeming party, at the time of redemption, interest during the redemption period at the maximum amount and rate permitted by Minnesota law, together with all other amounts permitted to be collected under applicable law.

**3.4.    Waiver of Rights.**  Borrower waives all rights to direct the order in which any of the Property shall be sold in the event of any sale under this Security Instrument, and also any right to have any of the Property marshaled upon any sale.  Borrower also hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce any loan documents.

**3.5.    Remedies are Cumulative.**  All remedies contained in this Security Instrument are cumulative, and Lender also has all other remedies provided by law, in equity, or in any other agreement between Borrower and Lender.  No delay or failure by Lender to exercise any right or remedy under this Security Instrument shall be construed to be a waiver of that right or remedy or of any default by Borrower.  Lender may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

**3.6.    Payment of Expenses.**  Borrower shall pay all of Lender's expenses incurred in any efforts to enforce any terms of this Security Instrument, whether or not any lawsuit is filed, including but not limited to legal fees and disbursements, foreclosure costs, escrow fees, filing fees, recording fees, and title charges.

**3.7.    No Cure or Waiver.**  Lender's nor any receiver's entry upon and taking possession of all or any part of the Property, nor any collection of rents, issues, profits, insurance proceeds, condemnation proceeds or damages, other security or proceeds of other security, or other sums, nor the application of any collected sum to any Obligation, nor the exercise of any other right or remedy by Lender or any receiver shall cure or waive any breach, Default or notice of default under this Security Instrument, or nullify the effect of any notice of default or sale (unless all Obligations then due have been paid and performed and Borrower has cured all other defaults), or impair the status of the security, or prejudice Lender in the exercise of any right or remedy, or be construed as an affirmation by Lender of any tenancy, lease, or option or a subordination of the lien of this Security Instrument.

**3.8.    Waiver of Statute of Limitations.**  Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Security Instrument or to any action brought to enforce any Loan Document.

**ARTICLE 4**
**MISCELLANEOUS**

**4.1.    Invalidity.**  The invalidity or unenforceability of any one or more provisions of this Security Instrument will in no way affect any other provision.

**4.2.    Statement.**  Borrower agrees to pay Lender a reasonable charge, not to exceed the maximum allowed by law, for giving any statement of the status of the Obligations secured by this Security Instrument.

**4.3.    Notices.**  All notices given under this Security Instrument must be in writing and will be effectively served upon personal delivery or, if mailed, no later than forty-eight (48) hours after deposit in first class or certified United States mail, postage prepaid, sent to Lender at its address appearing on the front page of this Security Instrument and sent to Borrower at its address appearing on the front page of this Security Instrument, which address may be changed by written notice.  However, the service of any notice of default or notice of sale under this Security Instrument as required by law will, if mailed, be effective on the date of mailing.

**4.4.    Rights of Lender to Release Debtors or Security.** Without affecting Borrower's liability for the payment of any of the indebtedness secured by this Security Instrument, Lender may from time to time and without notice to Borrower (a) release any person liable for the payment of this indebtedness, (b) extend or modify the terms of that indebtedness, or (c) accept additional real or personal property of any kind as security, or alter, substitute or release any property securing that indebtedness, or (d) consent to the making of any map or plat of the Property, or to reconvey any part of the Property, or to join in granting any easement or creating any restriction on the Property, or to join in any subordination or other agreement affecting this Security Instrument..

**4.5.    Inspection Rights.** Lender may at any reasonable times enter upon and inspect the Property in person or by agent.

**4.6.    Governing Law.** This Security Instrument and all rights and obligations hereunder shall be governed by and interpreted according to the laws of the state where the Property is located.

**4.7.    Use of Pronouns.** The term "Borrower" includes both the original Borrower and any subsequent owner or owners of any of the Property, and the term "Lender" includes the original Lender and also any future owner or holder, including pledges and participants, of the Note or any interests therein. Whenever the context requires, the singular includes the plural and vice versa and each gender includes each other gender.

**4.8.    Headings; Underlining.** The headings of the articles and sections of this Security Instrument are for convenience only and do not limit its provisions. The use of underlining in this Security Instrument is for convenience only, and the parties understand and agree that the presence or absence of underlining shall not be used in interpreting or construing this Security Instrument or any provision hereof.

**4.9.    Waiver.** Neither the acceptance of any partial or delinquent payment or performance nor the failure to exercise any rights upon a default shall be a waiver of Borrower's obligations hereunder. Lender's consent to any act or omission by Borrower will not be a consent to any other or subsequent act or omission or a waiver of the need for such consent in any future or other instance.

**4.10.    Successors and Assigns.** Subject to the provisions of Section 1.6 hereof, the terms of this Security Instrument shall bind and benefit heirs, legal representatives, successors and assigns of Borrower and Lender.

**4.11.    Joint and Several Liability.** If Borrower consists of more than one person or entity, each shall be jointly and severally liable to perform the Obligations of Borrower.

**4.12.    Subrogation.** Lender shall be subrogated to the lien of all encumbrances, whether released of record or not, paid in whole or in part by Lender pursuant to this Security Instrument or by the proceeds of any loan secured by this Security Instrument.

**4.13.    Time of the Essence.** Time of the Essence as to all obligations under this security instrument.

**4.14.    Requests For Notice.** Borrower requests that a copy of any notice of default and notice of sale required by law be mailed to it at its address set forth above.

**4.15.   Application of Rents.**  Notwithstanding anything apparently to the contrary in Article 5 hereafter, all rents and revenues collected by Lender or any receiver of the Property subsequent to the occurrence of an Event of Default shall be applied as follows:

(i)      to the payment of all reasonable fees of any other receiver approved by court;

(ii)     to the payment of all tenant security deposits then owing to any lessee under any Lease pursuant to the provisions of Minnesota Statutes Section 504B.178;

(iii)    to the payment of all prior real estate taxes and special assessments with respect to the Property, or if this Mortgage requires periodic escrow payments for such taxes and assessments, to the escrow payments then due;

(iv)     to the payment of all premiums then due for the insurance required by the provisions of this Mortgage, or if this Mortgage requires periodic escrow payments for such premiums, to the escrow payments then due;

(v)      to the payment of costs incurred in normal maintenance and operation of the Property;

(vi)     If received prior to any foreclosure sale of the Property, to Lender for the payment of the secured obligations secured by this Mortgage, but no such payment made after the acceleration of all or any of the secured obligations secured by this Mortgage shall affect such acceleration; and

(vii)    If received during or with respect to the period of redemption after a foreclosure sale of the Property;

(A)    If the purchaser at the foreclosure sale is not Lender, first to Lender to the extent of any deficiency of the sale proceeds to repay the Indebtedness, second to the purchaser as a credit to the redemption price, but if the Property is not redeemed, then to the purchaser of the Property; and,

(B)    If the purchaser at the foreclosure sale is Lender, to Lender to Lender to the extent of any deficiency of the sale proceeds to repay the Indebtedness secured by this Mortgage and the balance to be retained by Lender as a credit to the redemption price, but if the Property is not redeemed, then to Lender, whether or not such deficiency exits.

**4.16.   Non-Agricultural Use.**  Borrower represents and warrants that as of the date of this Security Instrument the Property is not in agricultural use as defined in Minnesota Statutes Section 40A.02, Subd. 3, and is not used for agricultural purposes.

**4.17.   Future Advances.**  (a) to the extent that this Security Instrument secures future advances, the amount of such advances is not currently known.   The acceptance of this Security Instrument by Lender, however, constitutes an acknowledgment that Lender is aware of the provision of Minnesota Statutes Section 287.05, Subd. 5, and intends to comply with the requirement contained therein.

(b)     The maximum principal amount of indebtedness secured by this Security Instrument at any one time, excluding any amounts constituting an "indeterminate amount" under Minnesota Statutes Section 287.05, Subd. 5, and excluding advances made by Lender in protection of the Property or the lien of this Security Instrument, shall be the amount set forth in the second paragraph on Page 1 of this instrument.

(c)     The representations contained in this section are made solely for the benefit of county recording authorities in determining the mortgage registry tax payable as a prerequisite to the recording of this Security Instrument.  Borrower acknowledges that such representations do not constitute or imply an agreement by Lender to make any future advances to Borrower.

## ARTICLE 5
## ASSIGNMENT OF LEASES AND RENTS

**5.1.     Scope of Assignment.**  Borrower hereby absolutely and irrevocably grants, sells, assigns, transfers and sets over to Lender:

**5.1.1.     Rents.**  All Rents now existing or hereafter created and affecting all or any portion of the Property or the use or occupancy thereof.

**5.1.2.     Leases.**  All of Borrower's right, title and interest in and to all leases, subleases, subtenancies, licenses, occupancy agreements and concessions covering Property or any portion thereof or space therein now or hereafter existing, including all modifications, amendments, extensions and renewals thereof, and all rights and privileges incident thereto (collectively **"Leases"**).

**5.1.3.     Security Deposits.**  All security deposits, guaranties and other security now or hereafter held by Borrower as security for the performance of the obligations of the Lessees under the Leases.

**5.2.     Effect of Assignment.**  This Assignment is intended by Borrower and Lender to create and shall be construed to create an assignment to Lender of all of Borrower's right, title and interest in the Rents and in the Leases, and shall be deemed to create a security interest therein for the payment of any indebtedness or the performance of any obligations of Borrower under the Note, or this Security Instrument. Borrower and Lender further agree that, during the term of this Assignment, the Rents shall not constitute property of Borrower (or of any estate of Borrower) within the meaning of 11 U.S.C. § 541, as amended from time to time.

**5.3.     Grant of License.**  By its acceptance of this Assignment and so long as an Event of Default shall not have occurred and be continuing hereunder, Lender hereby grants to Borrower a revocable license to enforce the Leases, to collect the Rents, to apply the Rents to the payment of costs and expenses incurred in connection with the development, construction, operation, maintenance, repair and restoration of the Property, and to any indebtedness secured thereby and to distribute the balance, if any, to Borrower.

**5.4.     Revocation of License.**  Upon the occurrence of an Event of Default, and at any time thereafter during the continuance of such default, Lender shall have the right to revoke the license granted to Borrower hereby by giving written notice of such revocation to Borrower.  Upon such revocation, Borrower shall promptly deliver to Lender all Rents then held by Borrower and Lender shall thereafter be entitled to enforce the Leases, to collect and receive, without deduction or offset, all Rents

payable thereunder, including, but not limited to, all Rents which were accrued and unpaid as of the date of such revocation and to apply such Rents as provided in this Security Instrument.

**5.5.** **Appointment of Borrower as Agent for Lender.**

**5.5.1.** **Purpose of Appointment.** Upon such revocation, Lender may, at its option, appoint Borrower to act as agent for Lender for the purpose of:

**5.5.1.1.** Managing and operating the Property and paying all expenses incurred in connection therewith and approved by Lender.

**5.5.1.2.** Enforcing the provisions of the Leases.

**5.5.1.3.** Collecting all Rents due thereunder.

**5.5.2.** **Notice to Borrower to Act as Agent.** If Lender so elects, Lender shall give written notice thereof to Borrower and Borrower agrees to act as agent of assignee for the purpose or purposes specified in such notice. Borrower shall promptly comply with all instructions and directions from Lender with respect thereto. Borrower shall not be entitled to any management fee, commission or other compensation unless expressly agreed to in writing by Lender.

**5.5.3.** **Deposit of Rents Collected.** All Rents collected by Borrower as agent for Lender pursuant to this Section shall be immediately deposited in an insured account in the name of Lender in a bank or other financial institution designated by Lender. All Rents collected by Borrower and all amounts deposited in such account, including interest thereon, shall be the property of Lender and Borrower shall not be entitled to withdraw any amount from such account without the prior written consent of Lender.

**5.5.4.** **Purpose of Agency.** The agency hereby created shall be solely responsible for the purpose of implementing the provisions of this Assignment and collecting the Rents due Lender hereunder. Nothing contained herein shall place upon Lender the responsibility for the management, control, operation, repair, maintenance or restoration of the Property nor shall Lender be liable under or be deemed to have assumed Borrower's obligations with respect to the Leases. Lender may at any time terminate the agency relationship with Borrower by written notice to Borrower.

**5.6.** **Collection by Lender.** Upon the occurrence of an Event of Default and at any time thereafter during the continuance thereof, Lender shall have the right, in addition to the rights granted pursuant to this Section 5.6 hereof, to collect all or any portion of the Rents assigned hereby directly or through a court-appointed receiver. Such right shall include any and all of the following:

**5.6.1.** **Notice to Lessees to Pay Rents to Lender.** The right to notify the Lessee or Lessees under the Leases, with or without taking possession of the Property, to demand that all Rents under such Leases thereafter be paid to Lender;

**5.6.2.** **Enter and Possess the Property.** The right to enter into possession of the Property, to assume control with respect to and to pay all expenses incurred in connection with the development, construction, operation, maintenance, repair or restoration of the Property, to enforce all Leases and to collect all Rents due there under, to apply all Rents received by Lender, to amend, modify, extend, renew and terminate any or all Leases, to execute new Leases, to execute new Leases and to do all other acts which Lender shall determine, in its sole discretion, to be necessary or desirable to carry out the purposes of this Assignment; and

**5.6.3. Specific Performance.** The right to specifically enforce the provisions of this Assignment and if Lender shall so elect, to obtain the appointment of a receiver pursuant to and in accordance with the provisions of this Security Instrument.

**5.7. Protection of Lessees.** Borrower and Lender agree that all Lessees under any Leases shall be bound by and required to comply with the provisions of this Assignment. In connection therewith, Borrower and Lender further agree as follows:

**5.7.1. Notice to Lessees of Assignment.** If requested by Lender, Borrower shall: (i) notify each Lessee under any Lease now affecting all or any portion of the Property of the existence of this Assignment and the rights and obligations of Borrower and Lender hereunder; (ii) provide each Lessee with a copy of this Assignment; and (iii) obtain such Lessee's agreement to be bound and comply with the provisions hereof.

**5.7.2. Reference to Assignment.** All Leases hereafter executed with respect to the Property or any portion thereof shall contain a reference to this Assignment and shall state that such Lessee shall be bound by and shall comply with the provisions hereof.

**5.7.3. Occurrence of Event of Default.** Upon the occurrence of an Event of Default and at any time thereafter during the continuance thereof, Lender may, at its option, send any Lessee a notice to the effect that: (i) an Event of Default has occurred and that Lender has revoked Borrower's license to collect the Rents; (ii) Lender has elected to exercise its rights under this Assignment; and (iii) such Lessee is thereby directed to thereafter make all payments of Rents and to perform all obligations under its lease or for the benefit of Lender or as Lender shall direct.

**5.7.4. Notice to Lessee to Comply with Leases.** Upon receipt of any such notice from Lender, each Lessee is hereby instructed by Borrower and Lender to comply with the provisions of such notice, to make all payments of Rents and to perform all obligations under the lease to and for the benefit of Lender or as Lender shall direct. Such notice and direction shall remain effective until the first to occur of: (i) the receipt by Lessee of a subsequent notice from Lender to the effect that such Event of Default has been cured or that Lender has appointed Borrower to act as agent for Lender pursuant to this Assignment; (ii) the appointment of a receiver pursuant to this Assignment, in which event such Lessee shall thereafter make payments of Rents and perform all obligations under the leases as may be directed by such receiver; or (iii) the issuance of an order of a court of competent jurisdiction terminating this Assignment or otherwise directing such Lessee to pay Rents and perform its obligations in a manner inconsistent with said notice.

**5.7.5. Lessee's Reliance on Notice from Lender.** Each Lessee shall be entitled to rely upon any notice from Lender and shall be protected with respect to any payment of Rents made pursuant to such notice.

**5.7.6. No Duty for Lessee to Investigate.** Each Lessee who receives a notice from Lender pursuant to this Assignment shall not be required to investigate or determine the validity or accuracy of such notice or the validity or enforceability of this Assignment. Borrower hereby agrees to indemnify, defend and hold such Lessee harmless from and against any and all loss, claim, damage or liability arising from or related to payment of Rents or performance of obligations under any lease by such Lessee made in good faith in reliance on and pursuant to such notice.

**5.7.7. No Assumption by Lender of Lease Obligations.** The payment of Rents to Lender pursuant to any such notice and the performance of obligations under any Lease to or for the

benefit of Lender shall not cause Lender to assume or be bound by the provisions of such Lease, including, but not limited to, duty to return any security deposit to the Lessee under such lease unless and to the extent such security deposit was paid to Lender by Borrower.

**5.7.8.** **Assignment Binding on Lessees.** The provisions of this Section 5.7 are expressly made for the benefit of and shall be binding on and enforceable by each Lessee under any Lease now or hereafter affecting all or any portion of the Property.

**5.8.** **Application of Rents; Security Deposits.** All Rents received by Lender pursuant to this Assignment shall be applied by Lender, in its sole discretion, to any of the following:

**5.8.1.** **First,** to pay any costs and expenses of collection of the Rents that may be incurred by Lender;

**5.8.2.** **Second,** to pay any costs and expenses incurred by Lender in connection with the development, construction, operation, maintenance, repair or restoration of the Property;

**5.8.3.** **Third,** to the establishment of reasonable reserves for working capital and for anticipated or projected costs and expenses of the Property, including, without limitation, capital improvements which may be necessary or desirable or required by law;

**5.8.4.** **Fourth,** to the payment of any indebtedness then owing by Borrower to Lender; and

**5.8.5.** **Thereafter,** to remit the remainder, if any, to the person or persons entitled thereto.

**5.8.6.** In connection therewith, Borrower further agrees that all Rents received by Lender from any Lessee may be allocated, if Lender so elects, to the payment of all current obligations of such Lessee under its Lease and not to amounts which may be accrued and unpaid as of the date of revocation of Borrower's license to collect such Rents. Lender may, but shall have no obligation to, pursue any Lessee for the payment of Rents which may be due under its lease with respect to any period prior to the exercise of Lender's rights under this Assignment or which may become due thereafter. Lender shall not be liable to any Lessee for the payment or return of any security deposit under any Lease unless and to the extent that such security deposit has been paid to and received by Lender, and Borrower agrees to indemnify, defend and hold Lender harmless from and against any and all losses, claims, damages or liabilities arising out of any claim by a Lessee with respect thereto. Borrower further agrees that the collection of Rents by Lender and the application of such Rents by Lender to the costs, expenses and obligations referred to herein shall not cure or waive any. default or Event of Default or invalidate any act (including, but not limited to, any sale of all or any portion of the Property or any property now or hereafter securing the Loans) done in response to or as a result of such Event of Default or pursuant to any notice of default or notice of sale issued pursuant to this Security Instrument.

**5.9.** **Covenants of Borrower.** Borrower agrees as follows:

**5.9.1.** **No Amendment or Termination of Leases.** Borrower shall not enter into, amend, modify or terminate any lease of all or any portion of the Property, except in accordance with the provisions of this Security Instrument;

**5.9.2.** **No acceptance of Advance Rent.** Borrower shall not accept advance rent in excess of one (1) month from any Lessee without the prior written consent of Lender;

5.9.3.  **Delivery of Leases.**  Upon request by Lender, Borrower shall provide Lender with true, correct and complete copies of all Leases, together with such other information relating to the Leases or to the Lessees thereunder as Lender shall reasonably request; and

5.9.4.  **Lender's Rights to Inspect Books and Records.**  Upon request of Lender, Borrower shall make available to Lender all books, records, financial statements and other information relating to the Leases, the collection of all Rents, and the disposition and disbursement thereof.

5.10.  **Priority of Assignment; Further Assurances.**  Borrower hereby represents and warrants that the Assignment of Rents hereby granted is a first priority assignment and that no other assignments of all or any portion of the Rents or the leases exist or remain outstanding.  Borrower agrees to take such action and to execute, deliver and record such documents as may be reasonably necessary to evidence such assignment, to establish the priority thereof and to carry out the intent and purpose hereof, if requested by Lender, Borrower shall execute a specific assignment of any lease now or hereafter affecting all or any portion of the Property.

5.11.  **Lender Not Responsible for Borrower's Obligations.**  Nothing contained herein shall operate or be construed to obligate Lender to perform any of the terms, covenants and conditions contained in any lease or otherwise to impose any obligation upon Lender with respect to any lease, including, but not limited to, any obligation arising out of any covenant of quiet enjoyment therein contained in the event the Lessee under any such Lease shall have been joined as a party defendant in any action to foreclose and the estate of such Lessee shall have been thereby terminated. Prior to actual entry into and taking possession of the Property by Lender, this Assignment shall not operate to place upon Lender any responsibility for the operation, control, care, management or repair of the Property or any portion thereof and the execution of this Assignment by Borrower shall constitute conclusive evidence that all responsibility for the operation control, care, management and repair of the Property is and shall be that of Borrower, prior to such actual entry and taking of possession.

5.12.  **Termination of Assignment.**  A full and complete release and reconveyance of this Security Instrument shall operate as a full and complete release of all of Lender's rights and interest hereunder.  Upon the recordation of such release and reconveyance, this Assignment shall thereafter be void and of no further effect.

THIS SECURITY INSTRUMENT IS A FIRST MORTGAGE.  NO FURTHER MORTGAGES WILL BE RECORDED AGAINST THE PROPERTY WITHOUT THE PRIOR WRITTEN CONSENT OF THE LENDER.  FAILURE TO COMPLY WITH THIS PROVISION SHALL CONSTITUTE A DEFAULT AND THE LOANS SHALL IMMEDIATELY BECOME DUE AND PAYABLE. CONSENT TO ONE FURTHER ENCUMBRANCE SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO REQUIRE SUCH CONSENT TO FUTURE OR SUCCESSIVE ENCUMBRANCES.


IN WITNESS WHEREOF, the undersigned have hereto set their hand and seal the above day and year above written.

BORROWER:

MIGHTY FORTRESS INTERNATIONAL MINISTRIES, INC.

By: _~St. Thomas R. Willi~_

Thomas R. Williams, President

ATTEST:

_Brenda J. Colston_

Brenda J. Colston, Secretary

STATE OF MINNESOTA          )
                            ) ss.
COUNTY OF  Hennepin         )

The foregoing instrument was acknowledged before me this _18_ day of _July_ _____, 2007, by Thomas R. Williams, President of Mighty Fortress International Ministries, Inc..

_Elizabeth A. Giese_

Notary Public

My commission expires _____.

ELIZABETH A. GIESE
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2010

## EXHIBIT "A"

## LEGAL DESCRIPTION

Lot 1, Block 1, Mighty Fortress Church, according to the recorded plat hereof, and
situate in Hennepin County, Minnesota.

## EXHIBIT "B"

### DESCRIPTION OF COLLATERAL

(a)     All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the land as described in Exhibit "A" ("Property"), and all fixtures, machinery, equipment, building materials, appliances and goods of every nature now or hereafter located on or upon, or intended to be used in connection with, the Land or the improvements thereon, including, but not by way of limitation, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators and related machinery and equipment; all plumbing; and all personal property and fixtures of every kind and character now or at any time hereafter located in or upon the Land or the improvements thereon, of which may now or hereafter be used or obtained in connection therewith, including, without limitation, fixtures, machinery, equipment, appliances, vehicles (excluding Debtor's personal automobiles, if any), building supplies and materials, books and records, chattels, inventory, accounts, farm products, consumer goods, general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Debtor and located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land or any improvements thereon, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of any of the foregoing, and all the right, title and interest of Debtor in any such fixtures, machinery, equipment, appliances, vehicles and personal property subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposit or payments now or hereafter made by Debtor or on behalf of Debtor, all trade names, trademarks, service marks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Land or any improvements thereon or any part thereof or are now or hereafter acquired by Debtor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, farm products, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described herein, and all other interests of every kind and character in all of the real, personal, intangible and mixed properties described herein which Debtor may now own or at any time hereafter acquire, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land and a part of the Land as between the parties hereto and all persons claiming by, through or under them.

(b)     All of the interest of Debtor in all easements, rights-of-way, licenses, operating agreements, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, oil and gas and other minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions and remainders, whatsoever, in any way belonging, relating or appertaining to the Land or any part thereof, or which hereafter shall in any way belong, relate or be

appurtenant thereto, whether now owned or hereafter acquired by Debtor.

(c)    All income (but not limited to, all revenues, pledges, income, gifts, donations and offerings from whatever source owned by Debtor), rents, issues, royalties, profits, revenues and other benefits of the Land from time to time accruing, all payments under leases or tenancies, proceeds of insurance, condemnation awards and payments and all payments on account of oil and gas and other mineral leases, working interests, production payments, royalties, overriding royalties, rents, delay rents, operating interests, participating interests and other such entitlements, and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Debtor of, in and to the same (hereinafter collectively referred to as the "Revenues"); reserving only the right to Debtor to collect the Revenues as provided in the Deed of Trust, Assignment of Leases and Rents and Security Agreement executed by Debtor in favor of Secured Party.

(d)    All construction or development contracts, subcontracts, architectural agreements, labor, material and payment bonds, and plans and specifications relating, to the construction of improvements on the Land including, without limitation (i) any engineering or architectural agreements entered into with respect to the design and other engineering or architectural services; (ii) the plans and specifications for the construction of said improvements prepared by any engineer or architect; and (iii) any agreements entered into with contractors, suppliers, materialmen or laborers with respect to construction of improvements on the Land.

(e)    If applicable, any and all management contracts, agreements, or other correspondence entered into by and between Debtor and third parties for the management of the collateral secured hereby.

(f)    Together with any and all additional items of personal property, furnishings, fixtures, equipment, furniture, trade fixtures, and other items of property not heretofore referenced above, including any and all musical instruments, pews, chairs, pulpits, podiums, desks, office furniture, classroom furnishings and materials, dormitory furniture, furnishing and materials, computer equipment and all other items used in connection with the operation of the premises as a college and for related college functions.

# EXHIBIT C



**Doc No 9003759** 07/06/2007 01:11 PM
Certified filed and or recorded on above date:
Office of the County Recorder
Hennepin County, Minnesota
Michael H. Cunniff, County Recorder
TransID 325582

Deputy 18
Fees
$35.50 DOC
$10.50 SUR
$0.00 COPY
$46.00 Total

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Foundation Capital Resources, Inc.
1661 North Boonville Avenue, Suite F
Springfield, MO 65803

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Mighty Fortress International Ministries, Inc. | | | | | |
| 1b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 6500 85th Avenue North | | Brooklyn Park | MN | 55334 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
| | | nonprofit | Minnesota | 4172-NP | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Foundation Capital Resources, Inc. | | | | | |
| 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 1661 North Boonville Avenue | | Springfield | MO | 65803 | USA |

4. This FINANCING STATEMENT covers the following collateral:

The collateral covered by this financing statement is described on Exhibit B attached hereto and made a part hereof by this reference and is associated with the real property described on Exhibit A attached hereto and made a part hereof by this reference.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)



# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | 9a. ORGANIZATION'S NAME | | |
|---|---|---|---|
| OR | Mighty Fortress International Ministries, Inc. | | |
| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only <u>one</u> name (11a or 11b) - do not abbreviate or combine names

| | 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | □ NONE |

**12.** □ **ADDITIONAL SECURED PARTY'S** <u>or</u> □ **ASSIGNOR S/P'S** NAME - insert only <u>one</u> name (12a or 12b)

| | 12a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**13.** This FINANCING STATEMENT covers □ timber to be cut or □ as-extracted collateral, or is filed as a ☑ fixture filing.

**14.** Description of real estate:

The collateral covered by this financing statement is described on Exhibit B attached hereto and made a part hereof by this reference and is associated with the real property described on Exhibit A attached hereto and made a part hereof by this reference.

**16.** Additional collateral description:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check <u>only</u> if applicable and check <u>only</u> one box.

Debtor is a □ Trust or □ Trustee acting with respect to property held in trust or □ Decedent's Estate

**18.** Check <u>only</u> if applicable and check <u>only</u> one box.

□ Debtor is a TRANSMITTING UTILITY

□ Filed in connection with a Manufactured-Home Transaction — effective 30 years

□ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

## EXHIBIT "A"

## LEGAL DESCRIPTION

Lot 1, Block 1, Mighty Fortress Church, according to the recorded plat hereof, and situate in Hennepin County, Minnesota.

# EXHIBIT "B"

## DESCRIPTION OF COLLATERAL

(a)    All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the land as described in Exhibit "A" ("Property"), and all fixtures, machinery, equipment, building materials, appliances and goods of every nature now or hereafter located on or upon, or intended to be used in connection with, the Land or the improvements thereon, including, but not by way of limitation, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators and related machinery and equipment; all plumbing; and all personal property and fixtures of every kind and character now or at any time hereafter located in or upon the Land or the improvements thereon, of which may now or hereafter be used or obtained in connection therewith, including, without limitation, fixtures, machinery, equipment, appliances, vehicles (excluding Debtor's personal automobiles, if any), building supplies and materials, books and records, chattels, inventory, accounts, farm products, consumer goods, general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Debtor and located in, on or about, or used or intended to be used with or in connection with the use, operation or enjoyment of the Land or any improvements thereon, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of any of the foregoing, and all the right, title and interest of Debtor in any such fixtures, machinery, equipment, appliances, vehicles and personal property subject to or covered by any prior security agreement, conditional sales contract, chattel mortgage or similar lien or claim, together with the benefit of any deposit or payments now or hereafter made by Debtor or on behalf of Debtor, all trade names, trademarks, service marks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Land or any improvements thereon or any part thereof or are now or hereafter acquired by Debtor; and all inventory, accounts, chattel paper, documents, equipment, fixtures, farm products, consumer goods and general intangibles constituting proceeds acquired with cash proceeds of any of the property described herein, and all other interests of every kind and character in all of the real, personal, intangible and mixed properties described herein which Debtor may now own or at any time hereafter acquire, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land and a part of the Land as between the parties hereto and all persons claiming by, through or under them.

(b)    All of the interest of Debtor in all easements, rights-of-way, licenses, operating agreements, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, oil and gas and other minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions and remainders, whatsoever, in any way belonging, relating or appertaining to the Land or any part thereof, or which hereafter shall in any way belong, relate or be

appurtenant thereto, whether now owned or hereafter acquired by Debtor.

(c)     All income (but not limited to, all revenues, pledges, income, gifts, donations and offerings from whatever source owned by Debtor), rents, issues, royalties, profits, revenues and other benefits of the Land from time to time accruing, all payments under leases or tenancies, proceeds of insurance, condemnation awards and payments and all payments on account of oil and gas and other mineral leases, working interests, production payments, royalties, overriding royalties, rents, delay rents, operating interests, participating interests and other such entitlements, and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Debtor of, in and to the same (hereinafter collectively referred to as the "Revenues"); reserving only the right to Debtor to collect the Revenues as provided in the Deed of Trust, Assignment of Leases and Rents and Security Agreement executed by Debtor in favor of Secured Party.

(d)     All construction or development contracts, subcontracts, architectural agreements, labor, material and payment bonds, and plans and specifications relating, to the construction of improvements on the Land including, without limitation (i) any engineering or architectural agreements entered into with respect to the design and other engineering or architectural services; (ii) the plans and specifications for the construction of said improvements prepared by any engineer or architect; and (iii) any agreements entered into with contractors, suppliers, materialmen or laborers with respect to construction of improvements on the Land.

(e)     If applicable, any and all management contracts, agreements, or other correspondence entered into by and between Debtor and third parties for the management of the collateral secured hereby.

(f)     Together with any and all additional items of personal property, furnishings, fixtures, equipment, furniture, trade fixtures, and other items of property not heretofore referenced above, including any and all musical instruments, pews, chairs, pulpits, podiums, desks, office furniture, classroom furnishings and materials, dormitory furniture, furnishing and materials, computer equipment and all other items used in connection with the operation of the premises as a college and for related college functions.

Minnesota Central Filing System

UCC Filing Acknowledgement

July 23, 2007
Page 1 of 1

US RECORDINGS, INC
2925 COUNTRY DRIVE
SAINT PAUL MN 55117

The Minnesota Central Filing System has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. If you find a potential error, please notify the appropriate filing office.

**Client Account Number:** 55380304                    **Batch Number:** 2442534

**Filing Type:** UCC Financing Stmt                    **Original Filing Number:** 200717613299

**Filed Date:** 07/23/2007        **Filed Time:** 11:17 a.m.        **Lapse Date:** 7/23/2012

| Party Type | Party Name and Address |
| --- | --- |
| Debtor | **MIGHTY FORTRESS INTERNATIONAL MINISTRIES INC**<br>**BROOKLYN PARK MN** |
| Secured Party | **FOUNDATION CAPITAL RESOURCES INC**<br>**SPRINGFIELD MO** |

Filing by the Minnesota Central Filing System is not conclusive proof that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If the filing is challenged, the filing office does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information on the filed document.

**User ID:** muldar82                                            **County ID:** 82

**Filing NO: 200717613299**
**Filing Date: 2007/07/23**
**Filing Time: 11:17 AM**
**State of Minnesota**
**Processing Office: Washington**
**Filed by: muldar82**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:    (Name and Address)

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive
St. Paul, MN  55117
4025172.1

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME

**Mighty Fortress International Ministries, Inc.**

OR

1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 6500 85th Avenue North | Brooklyn Park | MN | 55334 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | nonprofit | Minnesota | 4172-NP | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

OR

2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME

**Foundation Capital Resources, Inc.**

OR

3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1661 North Boonville Avenue | Springfield | MO | 65803 | USA |

4. This FINANCING STATEMENT covers the following collateral:

The collateral covered by this financing statement is described on Exhibit B attached hereto and made a part hereof by this reference and is associated with the real property described on Exhibit A attached hereto and made a part hereof by this reference.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum | | [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

## Instructions for UCC Financing Statement (Form UCC1)

Please type or laser-print this form. Be sure it is completely legible. Read all Instructions, especially Instruction 1; correct Debtor name is crucial. Follow Instructions completely.

Fill in form very carefully; mistakes may have important legal consequences. If you have questions, consult your attorney. Filing office cannot give legal advice. Do not insert anything in the open space in the upper portion of this form; it is reserved for filing office use.

When properly completed, send Filing Office Copy, with required fee, to filing office. If you want an acknowledgment, complete item B and, if filing in a filing office that returns an acknowledgment copy furnished by filer, you may also send Acknowledgment Copy; otherwise detach. If you want to make a search request, complete item 7 (after reading Instruction 7 below) and send Search Report Copy, otherwise detach. Always detach Debtor and Secured Party Copies.

If you need to use attachments, you are encouraged to use either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP).

A. To assist filing offices that might wish to communicate with filer, filer may provide information in item A. This item is optional.

B. Complete item B if you want an acknowledgment sent to you. If filing in a filing office that returns an acknowledgment copy furnished by filer, present simultaneously with this form a carbon or other copy of this form for use as an acknowledgment copy.

1. **Debtor name:** Enter only one Debtor name in item 1, an organization's name (1a) or an individual's name (1b). Enter Debtor's exact full legal name. Don't abbreviate.

1a. Organization Debtor. "Organization" means an entity having a legal identity separate from its owner. A partnership is an organization; a sole proprietorship is not an organization, even if it does business under a trade name. If Debtor is a partnership, enter exact full legal name of partnership; you need not enter names of partners as additional Debtors. If Debtor is a registered organization (e.g., corporation, limited partnership, limited liability company), it is advisable to examine Debtor's current filed charter documents to determine Debtor's correct name, organization type, and jurisdiction of organization.

1b. Individual Debtor. "Individual" means a natural person; this includes a sole proprietorship, whether or not operating under a trade name. Don't use prefixes (Mr., Mrs., Ms.). Use suffix box only for titles of lineage (Jr., Sr., III) and not for other suffixes or titles (e.g., M.D.). Use married woman's personal name (Mary Smith, not Mrs. John Smith). Enter individual Debtor's family name (surname) in Last Name box, first given name in First Name box, and all additional given names in Middle Name box.

For both organization and individual Debtors: Don't use Debtor's trade name, DBA, AKA, FKA, Division name, etc. in place of or combined with Debtor's legal name; you may add such other names as additional Debtors if you wish (but this is neither required nor recommended).

1c. An address is always required for the Debtor named in 1a or 1b.

1d. Reserved for Financing Statements to be filed in North Dakota or South Dakota only. If this Financing Statement is to be filed in North Dakota or South Dakota, the Debtor's taxpayer identification number (tax ID#) — social security number or employer identification number must be placed in this box.

1e,f,g. "Additional information re organization Debtor" is always required. Type of organization and jurisdiction of organization as well as Debtor's exact legal name can be determined from Debtor's current filed charter document. Organizational ID #, if any, is assigned by the agency where the charter document was filed; this is different from tax ID #; this should be entered preceded by the 2-character U.S. Postal identification of state of organization if one of the United States (e.g., CA12345, for a California corporation whose organizational ID # is 12345); if agency does not assign organizational ID #, check box in item 1g indicating "none."

*Note:* If Debtor is a trust or a trustee acting with respect to property held in trust, enter Debtor's name in item 1 and attach Addendum (Form UCC1Ad) and check appropriate box in item 17. If Debtor is a decedent's estate, enter name of deceased individual in item 1b and attach Addendum (Form UCC1Ad) and check appropriate box in item 17. If Debtor is a transmitting utility or this Financing Statement is filed in connection with a Manufactured-Home Transaction or a Public-Finance Transaction as defined in applicable Commercial Code, attach Addendum (Form UCC1Ad) and check appropriate box in item 18.

2. If an additional Debtor is included, complete item 2, determined and formatted per Instruction 1. To include further additional Debtors, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP) and follow Instruction 1 for determining and formatting additional names.

3. Enter information for Secured Party or Total Assignee, determined and formatted per Instruction 1. To include further additional Secured Parties, attach Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP) and follow Instruction 1 for determining and formatting additional names. If there has been a total assignment of the Secured Party's interest prior to filing this form, you may either (1) enter Assignor S/P's name and address in item 3 and file an Amendment (Form UCC3) [see item 5 of that form]; or (2) enter Total Assignee's name and address in item 3 and, if you wish, also attaching Addendum (Form UCC1Ad) giving Assignor S/P's name and address in item 12.

4. Use item 4 to indicate the collateral covered by this Financing Statement. If space in item 4 is insufficient, put the entire collateral description or continuation of the collateral description on either Addendum (Form UCC1Ad) or other attached additional page(s).

5. If filer desires (at filer's option) to use titles of lessee and lessor, or consignee and consignor, or seller and buyer (in the case of accounts or chattel paper), or bailee and bailor instead of Debtor and Secured Party, check the appropriate box in item 5. If this is an agricultural lien (as defined in applicable Commercial Code) filing or is otherwise not a UCC security interest filing (e.g., a tax lien, judgment lien, etc.), check the appropriate box in item 5, complete items 1-7 as applicable and attach any other items required under other law.

6. If this Financing Statement is filed as a fixture filing or if the collateral consists of timber to be cut or as-extracted collateral, complete items 1-5, check the box in item 6, and complete the required information (items 13, 14 and/or 15) on Addendum (Form UCC1Ad).

7. This item is optional. Check appropriate box in item 7 to request Search Report(s) on all or some of the Debtors named in this Financing Statement. The Report will list all Financing Statements on file against the designated Debtor on the date of the Report, including this Financing Statement. There is an additional fee for each Report. If you have checked a box in item 7, file Search Report Copy together with Filing Officer Copy (and Acknowledgment Copy). Note: Not all states do searches and not all states will honor a search request made via this form; some states require a separate request form.

8. This item is optional and is for filer's use only. For filer's convenience of reference, filer may enter in item 8 any identifying information (e.g., Secured Party's loan number, law firm file number, Debtor's name or other identification, state in which form is being filed, etc.) that filer may find useful.

EXHIBIT "A"

LEGAL DESCRIPTION

Lot 1, Block 1, Mighty Fortress Church, according to the recorded plat hereof, and
situate in Hennepin County, Minnesota.

## EXHIBIT "B"

## DESCRIPTION OF COLLATERAL

(a)   All buildings, structures and improvements of every nature whatsoever now or hereafter
situated on the land as described in Exhibit "A" ("Property"), and all fixtures, machinery,
equipment, building materials, appliances and goods of every nature now or hereafter
located on or upon, or intended to be used in connection with, the Land or the
improvements thereon, including, but not by way of limitation, those for the purposes of
supplying or distributing heating, cooling, electricity, gas, water, air and light; and all
elevators and related machinery and equipment; all plumbing; and all personal property
and fixtures of every kind and character now or at any time hereafter located in or upon
the Land or the improvements thereon, of which may now or hereafter be used or
obtained in connection therewith, including, without limitation, fixtures, machinery,
equipment, appliances, vehicles (excluding Debtor's personal automobiles, if any),
building supplies and materials, books and records, chattels, inventory, accounts, farm
products, consumer goods, general intangibles and personal property of every kind and
nature whatsoever now or hereafter owned by Debtor and located in, on or about, or used
or intended to be used with or in connection with the use, operation or enjoyment of the
Land or any improvements thereon, including all extensions, additions, improvements,
betterments, after-acquired property, renewals, replacements and substitutions, or
proceeds from a permitted sale of any of the foregoing, and all the right, title and interest
of Debtor in any such fixtures, machinery, equipment, appliances, vehicles and personal
property subject to or covered by any prior security agreement, conditional sales contract,
chattel mortgage or similar lien or claim, together with the benefit of any deposit or
payments now or hereafter made by Debtor or on behalf of Debtor, all trade names,
trademarks, service marks, logos and goodwill related thereto which in any way now or
hereafter belong, relate or appertain to the Land or any improvements thereon or any part
thereof or are now or hereafter acquired by Debtor; and all inventory, accounts, chattel
paper, documents, equipment, fixtures, farm products, consumer goods and general
intangibles constituting proceeds acquired with cash proceeds of any of the property
described herein, and all other interests of every kind and character in all of the real,
personal, intangible and mixed properties described herein which Debtor may now own
or at any time hereafter acquire, all of which are hereby declared and shall be deemed to
be fixtures and accessions to the Land and a part of the Land as between the parties
hereto and all persons claiming by, through or under them.

(b)   All of the interest of Debtor in all easements, rights-of-way, licenses, operating
agreements, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights,
waters, water courses, water rights and powers, oil and gas and other minerals, flowers,
shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or
under or above the same or any part or parcel thereof, and all estates, rights, titles,
interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and
reversions and remainders, whatsoever, in any way belonging, relating or appertaining to
the Land or any part thereof, or which hereafter shall in any way belong, relate or be

appurtenant thereto, whether now owned or hereafter acquired by Debtor.

(c)    All income (but not limited to, all revenues, pledges, income, gifts, donations and offerings from whatever source owned by Debtor), rents, issues, royalties, profits, revenues and other benefits of the Land from time to time accruing, all payments under leases or tenancies, proceeds of insurance, condemnation awards and payments and all payments on account of oil and gas and other mineral leases, working interests, production payments, royalties, overriding royalties, rents, delay rents, operating interests, participating interests and other such entitlements, and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Debtor of, in and to the same (hereinafter collectively referred to as the "Revenues"); reserving only the right to Debtor to collect the Revenues as provided in the Deed of Trust, Assignment of Leases and Rents and Security Agreement executed by Debtor in favor of Secured Party.

(d)    All construction or development contracts, subcontracts, architectural agreements, labor, material and payment bonds, and plans and specifications relating, to the construction of improvements on the Land including, without limitation (i) any engineering or architectural agreements entered into with respect to the design and other engineering or architectural services; (ii) the plans and specifications for the construction of said improvements prepared by any engineer or architect; and (iii) any agreements entered into with contractors, suppliers, materialmen or laborers with respect to construction of improvements on the Land.

(e)    If applicable, any and all management contracts, agreements, or other correspondence entered into by and between Debtor and third parties for the management of the collateral secured hereby.

(f)    Together with any and all additional items of personal property, furnishings, fixtures, equipment, furniture, trade fixtures, and other items of property not heretofore referenced above, including any and all musical instruments, pews, chairs, pulpits, podiums, desks, office furniture, classroom furnishings and materials, dormitory furniture, furnishing and materials, computer equipment and all other items used in connection with the operation of the premises as a college and for related college functions.

U40251721-010L05
UCC FIN SHT(SOS)
LOAN# ORTE704020
US Recordings